## FULLER v. ALLEN et al.

No.   4449.   Opinion Filed May 11, 1915.

(148 Pac. 1008.)

1.   Commerce—Corporations — Foreign   Corporations — "Transacting Business." Under sections 1335-1338, Rev. Stat. 1910, Ann., prescribing conditions under which foreign corporations may transact business in this state, by the phrase, "transacting business" is meant the doing or performing of a series of acts which occupies the time, attention, and labor of men for the purpose of livelihood, profit, or pleasure; but the doing of a single act pertaining to a particular business would not .be considered carrying on, transacting, or doing business as contemplated in said sections.

2.   CORPORATIONS—Foreign Corporations—Sale Contract—"Interstate Commerce"—Transacting Business. A contract, entered into between a resident of this state and a foreign corporation, with its place of business and only office in the city of St. Louis, Mo., in which it is agreed that said corporation for a fixed consideration will sell to a resident of this state 30 machines, to be used or sold in this state by said purchaser, and if any more such machines are desired by said resident, said company will furnish them delivered f. o. b. St. Louis, Mo., at $12 apiece, is interstate commerce, and not the transaction of such business as would require said corporation to file a copy of its charter and articles of incorporation with the secretary of this state, and otherwise comply with the laws of the state as provided in said statutes; and, in an action between the resident and his assignee involving the validity or value of said contract, it would be immaterial whether the corporation had complied with said sections or not.

(Syllabus by Robberts, C.)

*Error from County Court, Jefferson County;*

*B. T. Price, Judge.*

Action by C. P. Fuller against A. D. Allen and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*Harry Hammerly,* and *Dillard & Ellis,* for plaintiff in error.

*Bridges & Vertrees,* for defendants in error.

Form No. 14

ROBBERTS, C.  This case comes from the county court of Jefferson county.  The action was commenced in that county in the lower court by the plaintiff in error, who was also plaintiff below, and will herein be designated as plaintiff, against the defendants in error, who were also defendants below and will herein be designated as defendants, to recover the sum of $1,000, as alleged by plaintiff to be the balance due upon the sale of a stock of goods by plaintiff to defendants.  At the commencement of the suit an attachment was levied against certain property of the defendants, which attachment was afterwards discharged by the defendants executing bond to perform the judgment of the court.  The cause was tried upon an amended petition and answer of general denial. The petition alleged that plaintiff sold to defendants a certain stock of goods in Waurika, Okla., for the sum of $2,200; that $1,200 of said consideration was paid cash; that the defendant A. D. Allen represented himself to be the only authorized agent of the International Vending Machine Company, a corporation with its principal place of business in St. Louis, Mo., and represented that as agent he had authority to act for and in behalf of said company and to make contracts; that for the remaining $1,000 due upon the purchase price of the stock of goods, plaintiff agreed to accept a certain contract to be executed by the said vending machine company to this plaintiff, wherein plaintiff was to receive certain cigar vending machines and to have the exclusive right to operate same in certain counties; that plaintiff relied upon said statements and accepted the contract as $1,000 of the purchase price of said stock of goods; that said statements were false; that said vending machine company was a foreign corporation, and had never complied with the laws of Oklahoma relative to foreign corporations transacting business within this state; that the said Allen represented to plaintiff that said company had complied with the laws of Oklahoma and was authorized to transact business in Oklahoma; that said Allen delivered to this plaintiff a certain contract purporting to have been executed by said company, which was accepted by plaintiff,

the same being accepted upon the statements and representations of said defendant, which were relied upon by plaintiff; that said company repudiated said contract, failed to carry out the terms of same, and that by reason of said company not having complied with the laws of Oklahoma relating to foreign corporations, said contract was absolutely void, and could not pass as any part of the consideration for said stock of goods. Plaintiff tendered contract into court for defendants, and prayed judgment for $1,000. At the close of the plaintiff's evidence, the defendants demurred to same separately, each of which was sustained by the court. After judgment overruling motion for new trial and dismissing plaintiff's petition, plaintiff prosecutes this appeal.

Plaintiff submits five specifications of error but in his brief he refers only to the first two, which are as follows:

"First. That said court erred in refusing to permit this plaintiff to prove by the deposition of one Hugh L. Harrell that the International Cigar Vending Machine Company, a foreign corporation, had never complied with the laws of Oklahoma permitting it to transact business in said state, which was excepted to at the time.

"Second. That said court erred in striking out competent testimony offered in behalf of the plaintiff, and excepted to at the time."

It will be noticed that the second assignment complains of the the action of the trial court in striking out "competent testimony offered on behalf of plaintiff," which is too general, and under the rules will not receive further consideration. Supreme Court rule No. 25 (38 Okla. x, 137 Pac. xi). Evidently plaintiff recognized the force of that rule for the reason that in his brief he refers only to matters contained in the first assignment, viz.:

"That the International Cigar Vending Company, a foreign corporation, had not complied with the laws of Oklahoma, permitting it to transact business in this state."

That is the only question presented in plaintiff's brief, and under the rules of this court he must stand or fall upon that single proposition. The plaintiff offered proof tending to show that the vending company had not complied with the laws necessary and prerequisite to foreign corporations doing business in this state. Objections to that evidence were made by defendants and sustained by the court, presumably for the reason that it was immaterial. And that brings us to the question as to whether or not it was material, in the trial of this case in the lower court under the issues presented, whether the vending company had complied with the laws authorizing foreign corporations to do business in this state, and thereby involving the question as to whether or not the contract developed such conditions as made it necessary for said company to comply with the laws of this state in that particular. It will be borne in mind that this is not an action on behalf of the vending company, but simply involves the question of the value of the executory contract. That is, if it appears that it was necessary for this company as a foreign corporation to comply with the laws of this state in that particular, before the plaintiff could carry on the business anticipated in said contract, then said contract would, of course, be valueless to the plaintiff, and that part of the consideration for the sale of the stock of goods would have failed entirely, and the defendants would be liable to the plaintiff for the value of that contract, if the plaintiff had complied with the laws authorizing it to do business in this state; but, on the other hand, if the plaintiff could have transacted the business anticipated in the contract, without the vending company having complied with the laws referred to, then the question as to whether or not it had complied with the laws in that behalf would be immaterial, and the action of the court in ruling out the testimony would be proper. A copy of the contract is attached to the petition, and we gather from it that the company agrees upon certain conditions to assign to the plaintiff certain privileges and rights to use the vending machines in Grady county, Okla., and to furnish

said machines, which are manufactured in St. Louis, Mo., which is the only place of business of said machine company, and the only place, so far as the pleadings of this case show, where said company maintains offices and transacts its business. It will now be necessary to consider the statutes of Oklahoma involved in this case, which are as follows:

"No foreign corporation, except created solely for religious or charitable purposes, shall transact business within this state until it shall have filed in the office of the secretary of state a certified copy of its charter or articles of incorporation, which shall be recorded in a book to be kept by the secretary of state for that purpose, and shall have paid the fees required by law." Section 1335, Rev. Stat. 1910, Ann.

"Every foreign corporation shall, before it shall be authorized or permitted to transact business in this state or continue business therein, if already established by its certificate under the hand of the president and seal of the company, appoint an agent who shall be a citizen of the state and reside at the state capital, upon whom service of process may be made in any action in which said corporation shall be a party; and action may be brought in any county in which the cause of action arose, as now provided by law. Service upon said agent shall be taken and held as due service upon said corporation; and such certificate shall also state the principal place of business of such corporation in this state, with the address of the resident agent." Section 1336, Rev. Stat. 1910, Ann.

"A duly authenticated copy of the appointment and commission of such agent shall be filed and recorded in the office of the secretary of state, for which a fee therefor of one dollar shall be paid to the secretary and a like fee of one dollar for each subsequent appointment of any agent so filed. A certified copy of the appointment of said agent under the hand and seal of the secretary of state shall be sufficient evidence of the appointment of said agent in any court. The secretary of state shall prepare a list for distribution giving the names of all corporations with the name of their agent, showing the address of the agent by street and number, and shall include the same in his biennial report to the governor." Section 1337, Rev. Stat. 1910, Ann.

"If any such foreign corporation shall fail to comply with the foregoing provisions of this article, all its contracts with citizens of this state, entered into after the approval of this article, shall be void as to the corporation, and no court of this state shall enforce the same in favor of the corporation." Section 1338, Rev. Stat. 1910, Ann.

That part of the contract necessary and proper to be considered here, in the determination of the questions involved is as follows:

"This agreement, made and entered into this 4th day of December, 1909, by and between the International Vending Machine Company, a corporation, duly organized under the laws of the state of Missouri, with offices in the city of St. Louis, Missouri, party of the first part, and C. P. Fuller, of Waurika, Oklahoma, party of the second party, witnesseth: The party of the first part in consideration of the sum of $1,000.00 paid in cash does hereby grant and convey to said party of the second part the exclusive right to operate, lease, rent, place, or sell within the county of Grady, state of Oklahoma, the International Cigar Vending Machine. The party of the first part agrees to furnish free of charge with the above grant, 30 International vending devices, and to sell to the party of the second part as many more as may be necessary to cover said territory, at a price of $12.00 for each standard device; said machines to be delivered f. o. b. St. Louis, Missouri, on the written order of the party of the second part, within ten days or as soon thereafter as possible from the receipt of said order."

The question is, Would the vending machine company be transacting business in this state by the plaintiff exercising all the rights guaranteed to him under that contract? Would the vending machine company be transacting business in this state if the plaintiff was carrying on the business in this state attempted to be authorized under that contract; if so, would such business come within the inhibition provided for under the Constitution and laws of this state? In our opinion, both of these questions should be answered in the negative. As stated before, the only known business place of the vending company is St. Louis, Mo.; the only business that company has ever transacted in this state, so far as

this record shows, is the proposition in this contract to furnish to the plaintiff in this case these machines, 30 of which were to be furnished under the contract, and any and all other machines in addition thereto to be furnished to plaintiff at $12 apiece, delivered f. o. b. St. Louis. The contract and the appointment of agency attached to the contract also states that in case any difficulty or misunderstanding arises between the parties, it is to be settled by arbitration at the office of the company in St. Louis, Mo. The facts are, as shown by the contract, that the company manufactures and furnishes the machines and the plaintiff in this case carries on the business in this state. Certainly that does not come within the rule or definition of doing business in this state by the vending company as contempated under the statutes above quoted.

The question now presented is, What is meant by transacting business? The best definition we can think of for this phrase is the doing or performing a series of acts which occupy the time, attention, and labor of men for the purpose of livelihood, profit, or pleasure. It is well settled upon authority that the doing of a single act pertaining to a particular business or transaction will not be considered carrying on, transacting, or doing business. The mere term itself implies more than one transaction.

"The doing of a single act of business in another states does not constitute the doing of business within the meaning of foreign corporation laws." *Cooper Mfg. Co. v. Ferguson,* 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137; *Gilchrist v. Helena H. S. Co.* (C. C.) 47 Fed. 593, 594; *Leasure v. Union Mut. Life Ins. Co.,* 91 Pa. 491—493; *Nat. Knitting Co. v. Bronner,* 20 Misc. Rep. 125, 45 N. Y. Supp. 714.

"A contract between citizens of one state and a corporation of another state for the erection of a single plant is not a doing of business in the state where the plant is to be erected, within the statutes requiring foreign corporations to register before doing business therein. Doing business means a transaction of business during some continuous period, neither a single nor several transactions being conclusive, so as to show a doing of business. There must be a doing of some of the work, or an exercise of some

of the functions, for which the corporation was created." *Beard v. Union & A. M. Pub. Co.,* 71 Ala. 60; *International Cotton Seed Co. v. Wheelock,* 124 Ala. 367, 27 South. 517.

As stated before, the business transacted or contemplated by the vending company as indicated by the contract was the single act of contracting, or agreeing at some future time, to furnish the plaintiff with its machines, delivered f. o. b. St. Louis, Mo.; and the only business contemplated by the contract to be performed, carried on, or transacted was to be done by the plaintiff in this state, and not by the vending company; so it must be apparent to all, under the facts measured by the authorities upon that subject, that the vending company was not engaged in doing business in this state, and, so far as it appears from the contract under consideration, there was no intention on the part of the vending company to transact business in this state. On the other hand, above and beyond all that, is the proposition that, even though there was an attempt on the part of the vending company to transact the business in the manner claimed by the plaintiff, it would have been within the line of interstate commerce, and therefore not within the inhibitions of the Constitution and laws of this state. The vending company was manufacturing these machines in the state of Missouri—its only place of business was in the state of Missouri—under the contract, the delivery of the machines was to be within the state of Missouri. It was a contract between citizens of two different states; if it amounted to business or to transacting business, it was a transaction or doing of business between citizens of different states. The transaction brings it clearly within the rule laid down in Cyc. vol. 7, p. 416, as follows:

"A sale, the parties to which are of different states, is a transaction of interstate commerce, wherever the contract of sale may be made, when the goods are to be transported from one state to another, whether the sale is made before or after shipment. Negotiation and sale in such cases through selling agents or by agents to buy is also an act of interstate commerce, as is furthermore a contract between citizens of different states to furnish

goods and perform labor related hereto, or to manufacture and transport. A sale between citizens of different states is probably not a transaction of interstate commerce unless accompanied by interstate transportation of the goods."

After a very careful investigation of the questions involved herein, we have no hesitancy in saying that the case of *Harrell v. Peters Cartridge Co.*, 36 Okla. 684, 129 Pac. 872, 44 L. R. A. (N. S.) 1094, opinion by Commissioner Harrison, is one of the best-considered cases that we have been able to find. The collation of authorities, as well as the opinion of the court, and the application of the different cases cited are clear and distinct, as well as controlling, upon the subjects involved herein. Because of their peculiar applicability here we are tempted to quote from some of the citations made in that case as follows:

"In 13 Am. & Eng. Enc. of Law (2d Ed.) under the head 'What Constitutes Doing Business in This Connection,' on page 870, the rule is announced as follows: 'In regard to sales by foreign corporations in the domestic state, the following rulings have been made: The constitutional and statutory provisions are not violated by a sale of goods to citizens of the domestic state by a foreign corporation through traveling salesmen on orders approved at the home office, or by a shipment of goods by a foreign corporation into the domestic state on an order given outside of the state, or by a sale of goods in the domestic state by a foreign corporation through its itinerant salesman, or by a shipment of goods by a foreign corporation to a citizen of the domestic state on an unsolicited order, or by the placing by a foreign corporation of its products in the hands of local merchants in the domestic state to be sold on commission, or by a consignment of goods by a foreign corporation to factors in the domestic state to be sold by the factors and the proceeds collected and accounted for by them, or by a contract by a foreign corporation with a citizen of the domestic state to furnish, deliver, and set up for him within the domestic state certain machinery, and an acceptance in payment therefor of the purchaser's notes secured by mortgage on real estate situated within the state. In all the cases enumerated it may be stated, without fear of contradiction, that even if it be conceded that these statutes were applicable to foreign corporations, they

would still be inoperative as being in violation of the Interstate Commerce Act." See, also, notes and authorities cited.

" 'Interstate commerce, or commerce among the several states of the Union, is commerce which concerns more than one state. Strictly considered, it consists in intercourse and traffic, including in these terms navigation and the transportation and transit of persons and property, as well as the purchase, sale, and exchange of commodities.' (17 Am. & Eng. Enc. of Law, 61, and authorities cited in notes 3 and 4.)

" 'The negotiation in one state of sales of goods which are in another state, for the purpose of their introduction into the former state, constitutes interstate commerce. Where parties in one state order goods from persons or corporations in another state, and the goods are shipped into the state, although with a draft attached to the bill of lading, the transaction is one of interstate commerce.' *Id* 65, 66, and authorities cited in notes. * * *

"In *Blakeslee Mfg. Co. v. Hilton,* 5 Pa. Super. Ct. 184, it was said: "The words 'doing business,' as used in the act, should not be construed to mean taking orders or making sales by sample by agents coming into our state from another for that purpose. To hold otherwise would make the act offend against the Constitution of the United States as imposing unlawful restrictions on interstate commerce." * * * A corporation of one state may send its agents to another to solicit orders for its goods, or contract for the sale thereof, without being embarassed or obstructed by state requirements as to taking out licenses, filing certificates, establishing resident agencies, or like troublesome or expensive conditions.' * * *

" 'Any law which provides that the sale of goods by a foreign corporation through soliciting agents, who take orders subject to approval at the home office, is doing business within the state is void, because it is an interference with intersate commerce.' (*Davis & Rankin Mfg. Co. v. Dix* (C. C.) 64 Fed. 406.) * * *

" 'Statutes of the kind under consideration have no application to the case where a corporation sends into the restricting state its traveling agent who solicits orders for its goods and forwards them, subject to approval, to the home office, the orders being afterward filled by shipments to the customer.

Such an application of the statute would be inadmissable in so far as state statutes are concerned, because, so applied it would have the effect of imposing a restraint upon commerce between the states or with foreign countries.' (19 Cyc. 1272, 1273, and authorities cited in notes.)   *   *   *

"In *Wolff Dryer Co. v. Bigler,* 192 Pac. 466, 43 Atl. 1092, the court said: 'Where the foreign corporation has no office or place of business within the restricting state, and no part of its capital is invested there, and the goods are shipped either directly from its factory or upon its orders given to other factories, the fact that its agent came into this state and made contracts for machinery to be delivered here did not bring it within the inhibition of the act of 1874.' "

Another leading case upon this subject by our own court is that of *Chicago Crayon Co. v. Rogers,* 30 Okla. 299, 119 Pac. 630. That case is also controlling on the questions involved herein, and clearly supports the contention of the defendants.

The case should be affirmed, and we so recommend.

By the Court. It is so ordered.