## LIEUALLEN, Ex'r, v. YOUNG.

No. 15938—Opinion Filed Nov. 10, 1925.

1. Appearance—General Apperance by Foreign Executor After Revivor of Action.

Where an action is brought against a nonresident of the state and an attachment is issued and levied on his property in the county where the action is filed, and he makes a general appearance by filing an answer and thereafter dies before the cause is tried and proceedings are instituted to revive the action in the name of the foreign executor or administrator, who appears and takes part in the trial of the cause without objecting to the jurisdiction of the court, such appearance waives all irregularities as to notice as well as the question of jurisdiction over his person.

2. Witnesses — Competency — Testimony Against Representatives of Deceased Persons.

The purpose of the inhibition of section

588, C. S. 1921, is to prevent a person from testifying to transactions and communications had with a deceased person to the prejudice of his legal representatives or heirs when the voice of the decedent is silent to affirm or deny, but the rule can have no application where the legal representatives or heirs claim to be a party to the very transaction or communication involved and take the lead, in testifying what said transaction or communication was or was not.

3. **Appeal and Error—Harmless Error—Improper Documentary Evidence.**

Where the court permits a written instrument to be introduced in evidence over objection that the same is not the original nor a copy in the legal absence of the original, nor properly identified as a true and correct copy, the ruling of the court is error, but if the said instrument, so permitted to be introduced, served no useful purpose for the party offering it and worked no injury to the opposing party, the error was harmless.

4. **Same—Necessity for Prejudicial Error.**

Incompetent evidence to work a reversal of the judgment must be shown to have been prejudicial to the party complaining.

5. **Evidence—Exclusion — Opposite Party's Connection with Transaction not Shown.**

It is not error for the court to exclude evidence of transactions offered by defendant without showing that plaintiff was a party to such transactions.

6. **Judgment Sustained.**

The record examined, and held, the evidence sufficient, to reasonably support the judgment.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Muskogee County; O. H. Searcy, Judge.

Action by J. M. Young against John S. Sankey, deceased, as revived in name of F. P. Lieuallen, executor. Judgment for plaintiff, and defendant appeals. Affirmed.

Crump & Seawel, for plaintiff in error.

Brown, Brown & Williams and Kelly Brown, for defendant in error.

Opinion by THREADGILL, C. The facts in this case, upon which the action was based, were substantially as follows: J. M. Young and John S. Sankey were partners in drilling oil and gas wells with an equal interest in the drilling activity. On April 30, 1921, they entered into a written agreement for the termination and settlement of the partnership affairs. Said contract was as follows:

"This agreement made and entered into on this 30th day of April, 1921, by and between J. M. Young, hereinafter called party of the first part, and John S. Sankey, hereinafter called party of the second part, Witnesseth: That for and in consideration of the sum of $1,528.82 in hand paid by the said John S. Sankey, to J. M. Young, the receipt of which is hereby acknowledge, the said J. M. Young hereby grants, bargains, sells, conveys, transfers, and sets over all his right, title and interest in and to one certain oil well drilling outfit, including boiler, steam engines, drilling stem, ropes, drilling bits, wire lines, one Ford car, at Okmulgee, Okla., and other drilling equipment, which are now on board cars at Boynton, Okla. The first party further warrants that there is no lien or incumbrances against said property other than is shown on the books of the J. M. Young drilling contractor accounts, as kept by Mark Babcock at Tulsa, Okla. It is further understood and agreed that first party shall have the right and privilege to satisfy himself as to the accuracy and correctness of the accounts as kept by Mark Babcock on the J. M. Young drilling contractor books, said right to be exercised within 90 days after this transaction, and if after such audit there is found to be a sum in excess of $964.82 coming to the said J. M. Young, as his interest as a partner in one-half of the said tools, then and in that event said John S. Sankey agrees to pay said sum in excess of $964.82, as may be found by such audit. This agreement is binding upon the heirs, successors and assigns of the parties hereto."

The plain terms of this agreement were that J. S. Sankey was to pay J. M. Young $1,528.82 for his one-half interest in the drilling outfit; and any amount in excess of $964.82 shown by an audit of the books in Young's favor, Sankey was to pay, and Young was to have 90 days in which to audit the books to determine whether or not there was any such excess. It is not clear from the contract whether or not the $964.82, as shown by the books kept by Mark Babcock, the regular bookkeeper, had been paid Young, but it is clear that it was agreed that if there was any excess of this amount coming to him as determined by an audit of the books, Sankey should pay the same. After this contract was made and within the 90 days, J. M. Young had the books audited by J. A. Arnold & Company, accountants and auditors, and the amount found to be due him was the sum of $16,898.86, which he demanded that John S. Sankey pay according to the contract, and Sankey refused to pay it, and thereafter, on October 8, 1921, this action was brought to enforce the claim. Defendant Sankey was a resident of the state

of Texas, and the drilling outfit of the partnership was in this state, some of it being in Muskogee county and some in Okmulgee county, and an attachment was obtained against the property in both counties. Defendant John S. Sankey answered to the petition and admitted that they made the contract claimed by plaintiff, but denied that he owed the plaintiff the amount stated in the petition or any other amount. He stated that all the matters, transactions, and business dealings between them had long since been fairly, honestly and justly settled. That the settlement was based on an audit of the books and if said audit was not satisfactory to plaintiff, defendant was willing for the books to be audited by order of the court subject to objections of both parties. Soon after defendant filed his answer, he died, and one F. P. Lieuallen was appointed executor of his estate in Texas, and plaintiff had the cause of action revived in the name of the executor and the heirs at law, and thereafter on April 22, 1924, the cause was called for trial and said F. P. Lieuallen, as executor of the estate of John S. Sankey, deceased, appeared, and the plaintiff and executor stipulated as follows:

"It is stipulated and agreed by and between plaintiff and his counsel of record and F. P. Lieuallen as executor of the last will and testament of John S. Sankey, deceased, and his counsel of record, that the court appoint an accountant and referee, the parties herein having agreed and suggested Wilson J. Henry, to take the original record and book showing the transaction between the deceased and the plaintiff, the audit made by plaintiff through John A. Arnold, and an audit made by defendant through W. S. Spear, and from these records an audit to ascertain the exact items of dispute existing between plaintiff and defendant and report to the court these items of dispute alone and upon the filing of such report it is agreed that the plaintiff may amend his petition so as to seek a recovery of the disputed items alone and upon filing of such a petition the defendant may answer and the issues to be tried and determined, and it is especially agreed that the rights of neither party is to be waived nor affected by reason of this stipulation so far as consenting to the trial of those issues are concerned; in other words it being intended to stipulate that this agreement shall not be treated or considered by either party as the institution of any new action, but the continuation of the former action and to simplify the transactions involved.

"It is not understood that the right of amendment is precluded the inclusion in the petition of undisputed items to which the plaintiff might be entitled."

Pursuant to this stipulation the court made the order appointing the auditor, and the audit was made, which set forth two general subjects and which included a number of items that were left in dispute; one was the matter of underreaming a certain well drilled by the plaintiff and charged against the defendant, amounting to $1,500, and the other "shutdown time" on same well, amounting to $2,181.42. The plaintiff and executor waived the jury and submitted the evidence as to these items, as well as the law contended for by both parties, to the court, and the court, after hearing all the evidence, found, in substance, that the burden of proof was upon the plaintiff and that he had failed to discharge this burden "as to all of the items set forth in the Henry report as controverted, and in the amended petition of the plaintiff, with the exception of the items enumerated in item 2 at the bottom of page 3 of the Henry report," being the report of the auditor appointed by the court, and the items being stated as: "Underreaming 8¼ hole on Hefner No. 1, as per contract, $1,500.00; shutdown on Hefner No. 1, $2,181.43; total, $3,681.43. The court finds that as between the copartnership and John S. Sankey, the said John S. Sankey is, and was, indebted to said copartnership in the aforesaid sum." The court further found that since Young and Sankey were partners, the plaintiff, Young, was entitled to recover only ½ of the sum as above stated, being $1,840.73, and the court concluded as a matter of law that the plaintiff was entitled to recover this amount from the defendant, and rendered judgment accordingly. From this judgment defendant has appealed by petition in error and case-made alleging many assignments of error, and argues them under six propositions.

1. In the first proposition defendant contends that the trial court had no jurisdiction or power to render a personal judgment against F. P. Lieuallen, the executor of the Sankey estate, for the reason that said Lieuallen was a nonresident and foreign executor. Defendant cites sections 223, 1159, 1208, and 832, Compiled Statutes, 1921, and contends that when these sections are construed together it must be concluded a foreign executor cannot be made a party to an action in this state by publication of notice and by rendering personal judgment against him. It must be observed that the construction contended for by defendant and the authorities cited, to the effect that a foreign executor cannot be made a party defendant by revivor proceedings after the

death of the party sued, can have no application to this case, for the reason the executor, Lieuallen, appeared in the case and filed a motion to set aside the order of revivor, but waived it by not presenting the same to the court to be ruled on, and thereafter entering into the stipulation as to the audit of the books and the taking part in the trial of the case.

The general rule as stated in 7 R. C. L., page 1044, reads as follows:

"It is a universal rule that a general appearance in an action amounts to a waiver on the port of the defendant of his right to object thereafter to the jurisdiction of the court over his person; and this is so although the defendant is a nonresident and servable only in a particular place."

See, also, 7 R. C. L., section 66, page 1037, and 27 R. C. L., page 784.

Section 834, Compiled Statutes, 1921, provides:

"Upon the death of a defendant in an action, wherein the right, or any part thereof, survives against his personal representatives, the revivor shall be against them; and it may also be against the heirs and devisees of the defendant, or both, when the right of action, or any part thereof, survives against them."

It is clear from this statute that plaintiff had the right, upon the death of Sankey, to revive the action against the executor. Sankey was a nonresident of the state, and after the action was filed he appeared and answered to the petition, and it would make no difference whether service was had upon him by summons, served on him in this state or by publication provided where summons cannot be served; his answer waived the service, and submitted him to the jurisdiction of the court for all purposes, and when the executor was made a party defendant it was not a new action commenced, but a continuation or revivor of the action in the name of the executor. It is true. the requirements of other provisions of the statute than the one above quoted in making the revivor must be complied with, and proper notice must be given, but when the executor comes into court, whether he be the agent of the estate and a resident of the state where the action is pending. or the agent of the estate and a resident of another state, and makes a general appearance by stipulation involving the merits of the action, and where he takes part in the trial of the case without first making a special appearance for the purpose of objecting to the jurisdiction, he waives the question.

But defendant contends that the question of jurisdiction was specially reserved in the stipulations and quotes the language relied on for this contention as follows:

"* * * And it is especially agreed that the rights of neither party is to be waived nor affected by reason of this stipulation so far as consenting to the trial of those issues are concerned."

This language is not very clear, but its meaning appears by the context and in the words that follow, and which are separated from the above language only by a comma and which reads as follows:

"* * * In other words, it being intended to stipulate that this agreement shall not be treated or considered by either party as the institution of any new action, but the continuation of the former action and to simplify the transaction involved."

The simple meaning seems to be that the audit agreed on should not be conclusive, but be submitted to contest and the right to try any issues involved, and no new cause of action should grow out of this stipulation, but the former action should continue, and the agreement was for the purpose of simplifying the issues involved. We, therefore, conclude that defendant made a general appearance in the trial court and took part in the trial of the case without urging his objections to the jurisdiction, and when judgment has gone against him he cannot be heard to complain that there was no jurisdiction over his person and no power of the court to render a personal judgment against him.

2. Defendant's second proposition is to the effect that the court erred in permitting the plaintiff, Young, to testify that he did not have a contract to drill the well in controversy 2,400 feet and not charge for "shutdown time." Defendant contends that this was violative of section 588, Compiled Statutes, 1921, prohibiting a party from testifying to any transaction or any communication had with a deceased person when the executor, etc., is the adverse party and the party testifying obtained his title to the action directly from the deceased person, and cites the case of Vance v. Whitten, 51 Okla. 1, 151 Pac. 567. It will be observed that this testimony was offered as rebuttal testimony. The executor, Lieuallen, had taken the stand as a witness and had stated, in answer to questions propounded by his attorney, that he and John S. Sankey and Jas. A. Weaver were interested in the Hefner lease and well No. 1, being the well involved in the controversy. He stated that they made a verb-

al contract with J. M. Young to drill the well and that there was no agreement to pay for any "shutdown time" and underreaming. Now, the testimony complained of is to contradict this testimony of Lieuallen, and since Lieuallen says that he and Sankey and Weaver were interested in the well and the contract, and states the terms of a verbal contract he claimed they had with Young, it would not be error for the court to permit the plaintiff to tell his side of the contract within the limits of the facts as stated by the witness Lieuallen, and where the transaction included persons testifying against each other as well as the decedent. The purpose of the statute is to prevent a person from testifying to transactions and communications had with the deceased person to the prejudice of his legal representatives and heirs when the voice of the decedent is silent to affirm or deny, but the rule can have no application where the executor or heir claims to be a party to the very transaction or communication involved and takes the lead in testifying what said transaction or communication was.

3. Defendant's third proposition is to the effect that plaintiff's exhibit L, showing an itemized statement of the shutdown time, contended for, admitted as evidence by the court over the objection of the defendant, was not competent because not identified as the original and not declared to be a correct copy of the original and not preceded by a showing that the original could not be had by plaintiff, and he cites authorities to support the contention. We have examined the record, and find that plaintiff testified as follows about this exhibit:

"Q. Mr. Young, did you make out this statement yourself? A. I had a stenographer make it out; I made it out. Q. Did you see it was made out correctly? A. Yes, sir. Q. And after it was made out, did you check it with the original? A. Yes, sir. Q. Is it correct? A. Yes, sir."

In the absence of a showing that the original account could not be had by the plaintiff, this evidence was not sufficient to identify the exhibit and render it competent as evidence in the case. 22 C. J., section 1220, pages 974 and 1021; section 653, Compiled Statutes 1921; Cochran v. Bank of Tuttle et al., 31 Okla. 171, 120 Pac. 652; Batchelder v. Minks, 78 Okla. 149, 189 Pac. 194. However, the cause was tried to the court, and the audit states that the items of underreaming work and the shutdown time were in the Arnold report, being charged to John S. Sankey and credited to the drilling account, and it appears that the correctness of the

items was not disputed, but only the agreement to pay for the same, and evidence was introduced by both parties on this issue, and this being the manner in which the case was tried and without any former pleading on the part of the executor, and since there is other and sufficient evidence reasonably tending to support the judgment, the error complained of is harmless.

4. Defendant's fourth proposition relates to the testimony of plaintiff to the effect that the witness Chaney told him on April 28, 1921, "that he would show him a mistake in the books of a little better than $1,800; that they ran over the books and found where they made a little mistake and that it ran up to a little over $1,800, and that he did not want to have any trouble." Defendant says that this testimony was hearsay. Under the circumstances of the case, we fail to see where this evidence was of any service to the plaintiff or any injury to the defendant. There was no issue of mistake as to any of the audits and no claim of such mistake on the part of plaintiff, and there was no question of impeachment as to the witness Chaney, and there is nothing in the record tending to show that the court took into consideration this evidence in its findings of fact or in rendering judgment; and it is a well-known rule that if incompetent evidence is permitted by the court, it is harmless unless it is shown that the one party is benefited by it to the injury of the other party.

5. The fifth proposition is to the effect that the court committed error in excluding the testimony of the witness Weaver, by which it was offered to prove that Mark Babcock, the bookkeeper for the parties who owned the well for which the claim in controversy was made, did not send him, as one of the owners of the well, a statement of plaintiff's claims in any of his weekly reports, and at the time the work of underreaming was being done or the shutdown time was running. Defendant contends that this evidence was a part of the circumstances tending to show that during the time the well was being drilled there was no claim made by plaintiff for underreaming or shutdown time, and that the same was competent for this purpose, citing 22 C. J. 444, section 535-A. The court took the view that this "was a matter between Sankey and the owners of the lease and the system they used for the purpose of transacting business among themselves, and the plaintiff had no part in it; that it could not be binding on the plaintiff for any purpose." This was

the language the court used. There was no agreement by which plaintiff was made a party to the plan of the owners of the lease for the bookkeeper to send them statements as to the expenses and status of the work and well as the drilling was being done, and he could not be bound by their statements to each other when he was not a party to such statements. The court was right.

6. Defendant's sixth proposition is to the effect that the evidence is not strong enough to prove that plaintiff was entitled to pay for underreaming and for shutdown time. This is just another way of saying that the evidence is not sufficient to reasonably support the judgment. We have examined the whole record and read the evidence, and we cannot agree with this proposition. The testimony of the witnesses Paddock and Tillery is sufficient to prove that Sankey said he would have to pay for the shutdown time because of the bad casing they furnished, and plaintiff's testimony that Chaney, the superintendent, told him that Sankey would be responsible for the underreaming was not denied. There was also testimony tending to show the price per day of the two claims, the one $125 a day, and the other $100 a day.

We are, therefore, forced to the conclusion that the evidence was sufficient to reasonably support the judgment, and we think, upon the whole record, the judgment of the court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. pp. 1334, § 27; 1335, § 28; 1352, § 42; 1353, § 43; 7 R. C. L. p. 1044; 2 R. C. L. Supp. p. 496. (2) 40 Cyc. pp. 2260, 2341. (3) 4 C. J. p. 996, § 2979. (4) 4 C. J. p. 969, § 2952. (5) 22 C. J. pp. 444, § 535; 741, § 832. (6) 4 C. J. p. 879, § 2853.