ABC DRILLING CO., INC., Appellee,

v.

The HUGHES GROUP, Appellant.

No. 52050.

Supreme Court of Oklahoma.

March 18, 1980.

Rehearing Denied April 28, 1980.

Mark D. Coldiron and Brent D. Coldiron, Del City, for appellee.

Barney W. Miller and Steven C. Smith, Oklahoma City, for appellant.

HARGRAVE, Justice:

ABC Drilling Company, an Oklahoma corporation, brought this action against the Hughes Group, a foreign corporation, having its principal place of business in Phoenix, Arizona, alleging it incurred money damages resulting from breach of a contract executed in Oklahoma. The contract obligated A.B.C. to drill oil and gas wells for the defendant out of state. The petition alleges the defendant was obligated to furnish water and drilling mud under the agreement. After locating on the first drilling site on April 30, the plaintiff waited until May 17, 1976 for the arrival of those materials. Plaintiff alleged it was entitled to recovery of a daily standby rate of $2040.00 and actual expenses totaling $39,-354.86 in addition to attorney fees and costs. In a second cause of action, plaintiff prayed for a judgment of $22,500.00 for damages incurred by defendant's fraudulent misrepresentation of the ability to carry out its obligations under the contract, resulting in the loss of use of the drilling rig, and additionally sought a $25,000.00 punitive damages judgment.

The plaintiff served the Secretary of State of Oklahoma under the provisions of 18 O.S.1971 § 1.204a, which provides:

"In all cases where a cause of action has accrued or shall accrue to any person by reason of a foreign corporation doing business in this state or having done business in this state or while a foreign corporation was doing business within this state and such foreign corporation has no registered agent in this state upon whom service of summons or other process may be had, an action may be filed against such foreign corporation in any county in the state and service of summons or other process may be had upon the Secretary of State, and such service shall be sufficient to give jurisdiction of the person to any court in this state having jurisdiction of the subject matter whether sitting in the county where the Secretary of State is served or elsewhere in the state."

Although not required to do so under the above statute, the Secretary of State mailed the petition and summons to defendant's service agent and it was subsequently returned unable to forward.

Prior to the answer date, plaintiff applied for and received a special commission to take a deposition in Phoenix, Arizona. The Application, Order, Notice to Take Depositions and Affidavit of Service of Notice, all refer to "sundry witnesses" and reflect service of notice was made to the service agent at the same address from which the notice of process was returned unable to forward. Although the affidavit of service of notice to take deposition reflects registered mail, the record contains no return receipt. The deposition was taken and is included in the record before this Court. The deposed party, Loren Hughes, is the sole stockholder of the defendant corporation. At the time the deposition was taken, the process papers which had never theretofore been actually received by the defendant corporation were examined by the corporate service agent. Such inspection was informal and no return was made thereof nor could it be, inasmuch as the papers were presented for inspection by the plaintiff's attorney, an interested party, and was not the single summons issued by the court clerk as required by 12 O.S.1971, § 153, 12 O.S.Supp.1973 § 155, or 12 O.S. Supp.1972 § 158. Service of process must stand upon the provisions of 18 O.S.1971 § 1.204a. The informal, actual notice is not sufficient as a substitute for the jurisdictional requirement of service of process upon the defendant. *Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928).*

The journal entry issued a default judgment on the 9th day of February, 1977. That journal entry reflects the court swore witnesses and took testimony in open court, finding therefrom personal and subject matter jurisdiction, specifically stating, "plaintiff was duly served with summons more than thirty days prior to this date." The journal entry finds the contract at-

tached to the plaintiff's petition was "initiated and negotiated in the State of Oklahoma." The judgment assesses damages against the defendant on the first cause of action at $39,354.86, prejudgment and post-judgment interest costs of $27.00, and an attorney's fee of $6,823.26. The judgment assesses damages on the second cause at the sum of $22,500.00 and interest from judgment, reserving the punitive damages issue.

Three months and seventeen days after judgment, the defendant filed his motion to vacate the default judgment in which he preserved his objection to jurisdiction over the person of the defendant by alleging only jurisdictional defects. Therein the defendant alleges the court did not possess subject matter jurisdiction by virtue of the fact that the contract sued upon was not "initiated, negotiated, executed, performed or intended to be performed in the State of Oklahoma." Secondly, defendant objected to service, alleging the service made upon the Secretary of State did not afford actual knowledge of the pending litigation. Thirdly, the motion to vacate alleges the taking of a default judgment against the defendant corporation without service of process upon it is a violation and denial of due process of law as guaranteed by Article 2, § 7 of the Oklahoma Constitution and the Fourteenth Amendment to the Federal Constitution, when, as in this instance, the plaintiff had actual knowledge of the location of the corporate office and whose service agent's name and address were a matter of public record.

▇▇▇ The trial court's order overruling the motion to vacate recites a finding that the Court had jurisdiction over the corporate defendant by virtue of service of process on the Secretary of State, finding that service proper inasmuch as the foreign corporation had no service agent in this state. The order then states, ". . . the Court lacks jurisdiction to entertain said motion for reasons as set forth." A void judgment, however, may be vacated at any time on motion of a party or any person affected thereby. 12 O.S.1971 § 1038. A personal judgment rendered against a cor-

poration without service of process *on it* or other sufficient legal notice to it, in the absence of an appearance in the suit, is void for want of jurisdiction. *Southwestern Surety Ins. Co. v. Walser,* 77 Okl. 240, 188 P. 335 (1920). Here the motion to vacate is directed solely to jurisdictional defects in the judgment and thus the defendant has not waived defects in the judgment relating to jurisdiction over the person of the defendant. *La Bellman v. Gleason & Sanders, Inc.,* 418 P.2d 949 (Okl.1966).

In the case of *Consolidated Flour Mills v. Muegge,* 127 Okl. 295, 260 P. 745 (1927) substantially the same objection as is now raised to 18 O.S.1971 § 1.204a was offered against C.O.S. 1921 § 5442, which provided:

"Any foreign corporation, doing business in the State of Oklahoma, having failed either to appoint an agent upon whom service of summons or other process may be had, or failed to file in the office of the Secretary of State a duly authenticated copy of its article of incorporation or character [charter], or having failed to pay the license fee as required by law, then in the event of said foreign corporation having failed to comply with any of the provisions of the law above referred to, any person now or hereafter having any cause of action against any foreign corporation may file suit against said foreign corporation in any county in the state and service of summons or any process upon the Secretary of State shall be sufficient to give jurisdiction of the person to any court of this state having jurisdiction of the subject-matter."

Title 18 O.S.1971 § 1.204a similarly contains a provision for service of process upon the Secretary of State without a requirement that such service be forwarded to the defendant. Insofar as both statutes provide for service on a foreign corporation not having a service agent appointed within the state by serving the Secretary of State and contain no provision for forwarding such service to the corporation itself, the statutes are operatively identical. Prior to 1972, however, Title 18 contained a second provision in § 661 specifying that the Secretary

of State shall forward the service of process served upon him to the corporate defendant. This provision was repealed by Ch. 208, § 12 Okla.Sess.Law 1972 and therefore, as the law of this state now stands, there exists no statutorily imperative procedure for assuring that notice of process is transmitted to the defendant in the manner most likely under the circumstances to achieve actual notice of the pending litigation.

Precisely this posture of the law was upheld by this state's Supreme Court in *Consolidated Flour Mills v. Muegge, supra*. The rationale utilized to justify this method of service of process was that where state law designates an agent upon whom service of process may be served, the corporation assents to the statute and at least impliedly clothes that officer with authority to receive service in its behalf upon that corporation's failure to appoint a resident service agent. This decision upholding the constitutionality of the statute was overturned in a memorandum opinion, *Consolidated Flour Mills v. Muegge, 278 U.S. 559, 49 S.Ct. 17, 73 L.Ed. 505 (1928)*, stating: "Reversed on the authority of *Wuchter v. Pizzutti*". *(276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928))*. *Wuchter*, however, deals with a state of facts involving service of process on a nonresident motorist by serving the Secretary of State and does not involve service on a foreign corporation. Adding to the scenario is the case of *Washington ex rel. Bond & G & T v. Superior Court, 289 U.S. 361, 53 S.Ct. 624, 77 L.Ed. 1256 (1933)*. That case held service upon the Secretary of State was sufficient in a case in which the corporation had domesticated within the state, subsequently had withdrawn and then became a defendant in the action by virtue of the service on the state official in an instance in which there was no statutory provision for forwarding that process. Considering *Consolidated Flour Mills v. Muegge, 127 Okl. 295, 260 P. 745 (1927)*, reversed in 278 U.S. 559, 49 S.Ct. 17, 73 L.Ed. 505, and comparing the facts with *Washington ex rel. Bond, supra*, we note that the material distinction between the two is the fact that in *Consolidated* the corporation doing business in Oklahoma was a foreign corporation which

had never been domesticated. Contrastingly, in *Washington, supra*, the corporation served by serving the state official was at one time domesticated but had withdrawn from the state at the time service was made. In *Washington, supra*, the Federal Supreme Court upheld the constructive service had therein upon the Secretary of State, noting the fact that the appellant had previously qualified to do business in that State and complied with the registration statute distinguished that case from *Consolidated Flour Mills v. Muegge, supra*. The distinguishing factor is that once the corporation has complied with the domestication provisions of the state statutes, it has consented to be bound by the state's corporation statutes, therefore deemed to be cognizant of the state's statutes generally and the alternative to appointment of a service agent within the state in particular. Once having invoked the protection of the laws of Oklahoma, the potential defendant has acquiesced in the application of these statutes to his business and affairs, and can be held to have chosen the particular service alternative applicable in his situation. It is therefore seen that the notice provided by § 1.204a is reasonably calculated to provide notice of the pending action to a domesticated corporation in the best manner available under the circumstances and that if notice does not actually reach the defendant, he is the party bearing the responsibility for that failure.

 Where the notice reaches a foreign corporation which has not been domesticated, we perceive a material and decisive distinction which dictates the invalidity of the Oklahoma statute and at the same time explains the constitutional validity of the Washington statute in the face of *Muegge, supra*. The Washington statute provides that after withdrawal of a foreign corporation from the state, it must maintain an agent therein until the statute of limitations has run upon any cause of action created during its presence in the state. Failing such compliance, service may be had on the Secretary of State. The Federal Supreme Court stated in *Washington ex rel.*

*Bond, supra,* 289 U.S. at pages 364 and 365, 53 S.Ct. at page 626:

> "We are told . . . that by qualifying as a foreign corporation appellant did not consent to the arbitrary and unconstitutional condition that it might be cast in judgment without notice of suit. We think, however, that the position is unsound."
>
> * * * * * *
>
> "It has repeatedly been said that qualification of a foreign corporation in accordance with the statutes permitting its entry into the state constitutes an assent on its part to all the reasonable conditions imposed." (citations omitted).

In *Consolidated Flour Mills v. Muegge, 278 U.S. 559, 49 S.Ct. 17, 73 L.Ed. 505 (1928),* the Oklahoma statute was held violative of the basic tenets of due process by citation to *Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446* (a non-resident motorist case). There is a basic distinction between methods by which a state may exercise personal jurisdiction over a corporation and an individual citizen which arises from the state's power to exclude or condition entry of a foreign corporation into a state. *Hanover Fire Ins. Co. v. Carr, 272 U.S. 494, 47 S.Ct. 179, 71 L.Ed. 372 (1926).* The service necessary to obtain jurisdiction over a non-resident individual and a non-resident corporation never having complied with the state's registration statutes must incorporate a reasonable provision for giving the defendant notice of initiation of litigation. The fact that a potential defendant has qualified to do business in the state and complied with the domestication or registration statute establishes the corporation's appointment of the state official (here the Secretary of State) in the absence of the appointment of another resident agent. Where the corporation has not so designated a service agent by domesticating and selecting the state official by default in appointing an alternative, service on the Secretary of State, is not service of the corporation's agent and the statute fails to require a reasonable provision for service of the corporation's agent. Insofar as 18 O.S.

1971 § 1.204a allows blind service on the Secretary of State to establish personal jurisdiction over a foreign corporation not domesticated at the time the cause of action arose, so that the corporation has not consented to the application of the service statute, it is violative of the due process requirement that the statute must afford notice reasonably calculated under all circumstances to apprise interested parties of the pendency of the action. *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).*

▮ The appellee asserts that the corporation could have appointed an agent and its failure to do so estops it from denying the state official is its agent for service of process, because by doing business in the state, the corporation asserts a compliance with the state's laws and will not thereafter be heard to say that it did not submit to the jurisdiction of the state, citing 36 Am.Jur. Foreign Corporations, § 52 as authority therefor. This statement is correct but not in point. The text cited refers to the fact that by doing business in the state the corporation submits itself to subject matter jurisdiction of the state over the business that is done here. This principle is not referable to personal jurisdiction.

▮ We reject the appellee's contention that the foreign corporation, by doing business within the state, (as the judgment roll establishes) and failing to domesticate, can be estopped to deny compliance with the domestication statutes which would establish the Secretary of State as his agent for service of process as a matter of law. 12 O.S.1977 Supp. § 187 and 12 O.S.1971 § 1701.01 et seq. collectively allow this state to exercise jurisdiction over the action to the outer reaches of due process, i. e., in instances where minimal contacts with the forum state are present. *Glidewell Motors v. Pate, 577 P.2d 1290 (Okl.1978); Carmack v. Chemical Bank New York Trust Co., 536 P.2d 897 (Okl.1975); Marathon Battery Co. v. Kilpatrick, 418 P.2d 900 (Okl.1966).* This Court has not held that doing business within this state of a sufficient character and quantity to satisfy 12 O.S.1971 § 1701.-

03(1), requiring only "transacting any business in this state;" as a basis of personal jurisdiction is sufficient to require the corporation to domesticate. Indeed, the phrase "doing business" or "transacting any business" as a basis for jurisdiction requires only minimal contacts with the forum state and may be satisfied by an isolated transaction. *Vemco Plating v. Denver Fire Clay Co., 496 P.2d 117 (Okl.1972); Vinita Broadcasting Co. v. Colby, 320 F.Supp. 902, 904 (N.D.Okl.1971).*

■ The corporate presence within the state necessary to establish the corporation as doing business within the state sufficient that it is required to domesticate is not measured by the minimum contact principle. The concept of doing business within the state for purposes of domestication has been discussed in *Mortgage Bond Co. v. Stephens, 181 Okl. 182, 72 P.2d 831, 840, 841 (1937).* The fact of a distinction between the two applications of the phrase "doing business for purposes of licensing and domestication" was recalled and the Court reaffirmed the definition utilized in *Denison v. Phipps, 87 Okl. 299, 211 P. 83 (1922),* which was in turn derived from the case of *Fuller v. Allen, 46 Okl. 417, 148 P. 1008 (1915)*:

"The question now presented is, What is meant by transacting business? The best definition we can think of for this phrase is the doing or performing a series of acts which occupy the time, attention, and labor of men for the purpose of livelihood, profit or pleasure. It is well settled upon authority that the doing of a single act pertaining to a particular business or transaction will not be considered carrying on, transacting, or doing business. The mere term itself implies more than one transaction.

" 'The doing of a single act of business in another state does not constitute the doing of business within the meaning of foreign corporation laws . . .' "

■ By the record presented, the defendant is not shown to have entered into a series of acts constituting the doing business required to invoke the domestication statutes of this state. Therefore, the contention that he should be estopped or prohibited from denying compliance with the domestication laws and thus unable to present the jurisdictional error of failure to serve process on an agent of the corporation does not obtain. The defendant presented the jurisdictional defect in the judgment to the trial court, and demonstrated that judgment to be void on its face for lack of jurisdiction over his person. Finding the statutory provision of 18 O.S.1971 § 1.204a constitutionally impermissible under the tenets of *Mullane v. Central Hanover Bank, supra,* inasmuch as it allows judgment to be rendered without service of process upon an undomesticated foreign corporation and is not reasonably calculated to apprise the defendant of the impending suit, the judgment is void. The trial court's ruling on the motion to vacate is reversed, the default judgment is vacated, and the cause is remanded.

REVERSED AND REMANDED.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, SIMMS and DOOLIN, JJ., concur.

OPALA, J., concurs in part and dissents in part.

OPALA, Justice, concurring in part and dissenting in part:

At issue is the correctness of the trial court's refusal to vacate a default judgment in § 1031 proceedings.[1] The judgment under challenge was against an Arizona corporation—unlicensed in this state. Its suability in Oklahoma for the liability sought to be imposed was predicated on a single transaction alleged to have the constitutionally requisite "minimum contacts" with the state. Our opinion condemns as falling short of the fundamental law's mandate both our statute [2] and the process pursuant to which the foreign defendant was haled

---

1. 12 O.S.1971 § 1031.

2. 18 O.S.1971 § 1.204a.

into court. While I fully concur in this appraisal of the applicable legal norm, I cannot join in the court's judgment. *As I view the record, the out-of-state entity in suit—though notice to it was concededly constitutionally deficient—was nonetheless amenable to the district court's jurisdiction.* This is so because *it had entered a voluntary appearance* in the case when its president and legal counsel were both present, before answer date, at the taking of merits depositions in Phoenix, Arizona and the president allowed himself, then and there, to be deposed without any objection of counsel in attendance.

When the motion to vacate was reached for disposition below the defendant's prior voluntary appearance in the case was not shown "of record" by a proper recital in the journal entry nor was it otherwise apparent from the face of the judgment roll. The judgment was therefore void on the face of the roll and subject to attack—direct or collateral—within a statutorily unlimited time span.[3] Aside from want of a showing with respect to the defendant's voluntary appearance in the case prior to answer date, another procedural infirmity crept into the process of procuring the judgment sought to be vacated. When seeking the default judgment under challenge the plaintiff failed to comply with Rule 10, Rules for the District Court.[4] That rule provides that before a motion for default judgment may be heard against one who previously has made an appearance in the case, notice of at least five days must be given by the movant.

There exists no legal impediment at this time to a correction of the record *nunc pro tunc* by showing, on remand, the defendant's prior voluntary appearance.[5] A defendant who has *never* been served with summons may, by voluntary appearance, submit himself to the court's jurisdiction. A recital to that effect would cure the fatal jurisdictional defect here under challenge.[6]

When the concept of "voluntary appearance" as a substitute for legal process service was making its debut on our legal scene, some early judicial expressions seemed to require that "to constitute an appearance, there must be some formal entry, or plea, or motion, and this must be of record, and can be tried only by the record."[7] This notion was no doubt a carry-over from the earlier common-law approach which regarded "appearance" not as mere presence in court but as an act "of record", such as, giving bail upon arrest or "safe pledges" for one's appearance.[8] The early view is now firmly superseded by modern notions of procedure. These notions regard appearance as no more than knowledge of the pending proceedings coupled with acts from which intention to submit to the jurisdiction may be inferred.[9] A writing "spread upon the record" is no longer the required abracadabra of appearance.[10] The doctrine of voluntary appearance applies to

---

3. When the judgment roll fails to disclose that defendant was brought into court by process that is constitutionally due him, the judgment rendered in the case is *void* on the face of the record proper. *Magnolia Petroleum Co. v. Young*, Okl., 264 P.2d 757, 762 [1953]. It is subject to both direct or collateral attack "*at any time*". 12 O.S.1971 § 1038; *Farmers' Union Co-op. Royalty Co. v. Woodward*, Okl., 515 P.2d 1381, 1384 [1973].

4. 12 O.S.Supp.1973, Ch. 2, App.

5. *Nunc pro tunc* amendment of the record may be made at any time to make it speak the truth. *Stevens Expert Cleaners & Dyers v. Stevens*, Okl., 267 P.2d 998, 1000 [1954].

6. 12 O.S.1971 § 162; *May v. Casker*, 188 Okl. 448, 110 P.2d 287, 290 [1940].

7. *Scott v. Hull*, 14 Ind. 136 [1860]; *State ex rel. Cronkhite v. Belden*, 193 Wis. 145, 211 N.W. 916, 57 A.L.R. 1218 [1927]; 5 Am.Jur.2d, Appearance, § 12, p. 488; anno. 68 A.L.R. 385, 388.

8. Koffler and Reppy, Common Law Pleadings; Millar, Civil Procedure of the Trial Court in Historical Perspective 74 [1952].

9. A telephone call may constitute an appearance. *Perdue v. Sherman*, 246 N.W.2d 491, 494 [N.D.1976].

10. *Rand v. Nash*, 174 Okl. 525, 51 P.2d 296, 297 [1935]; *Matthies v. Union Products Co.*, 140 Kan. 232, 36 P.2d 89 [1934].

both persons within the jurisdiction as well as to " 'the defendant [who] is a nonresident and servable only in a *particular place.*' " [11]

The out-of-state corporate defendant in this case unquestionably had knowledge of the pending Oklahoma suit in advance of the time depositions were to be taken in Phoenix. Its president's act of appearance with counsel pursuant to previous notice for that proceeding and of allowing himself to be deposed on the merits of the action without any objection [12] by counsel in immediate attendance must, without a doubt, be deemed a voluntary appearance which, under 12 O.S.1971 § 162, is to be viewed as "equivalent to service" of constitutionally acceptable court process. One's presence and participation at deposition-taking may constitute an appearance "to the merits" of the controversy.[13] This much was settled by the Supreme Court of Kansas in *Bentz v. Eubanks* [14] before our adoption of the Code of Civil Procedure from that state. In *Bentz* defendant's presence was held to be an involuntary appearance because it took place after service of summons. Here the attendance at, and active participation in, deposition-taking *occurred before any process was served upon the corporate entity. There could be hence no coercive element* present in the president's attendance. Although *Bentz* is, as shown, distinguishable on the facts, its holding firmly supports the view that a defendant's attendance at a deposition hearing on the merits of the controversy constitutes an appearance in the case which—depending on the circumstances—may be characterized either as voluntary or involuntary. This much of *Bentz* —and not an iota more—has survived intact all subsequent Oklahoma statutory amendments to the Kansas Code of Civil Procedure and is still binding precedent.[15]

The effect of defendant's voluntary appearance cannot be avoided by its "reservation" of objections in the stipulation that preceded the taking of the deposition.[16] The objections so reserved were confined to those which govern the admissibility of the testimony given. The stipulation as a whole is utterly inconsistent with the notion of a reserved challenge to the jurisdiction of the Oklahoma court. This is so because it reserves all objections "until the time of trial". Neither is the defendant aided by the Oklahoma "Rules of Civil Procedure" to which reference was made in the stipulation. Our law provides in 12 O.S.1971 § 434 that a *pending challenge* to the validity of service is not waived by a party's appearance at deposition taking. There was *no* pending challenge on file in this case when defendant's president attended and gave testimony. Moreover, in 12 O.S.Supp.1979 § 390.1 the statute provides that the party "obliged" to attend a deposition hearing is one "who has been legally served with summons or entered an appearance in the

---

11. *Lieuallen v. Young*, 115 Okl. 153, 241 P. 342, 344 [1925].

12. The "stipulation" contained in the deposition's transcript did not preserve defendant's challenge or objection to the Oklahoma court's jurisdiction. In pertinent part the stipulation provides:

". . . deposition . . . [is] taken pursuant to the Rules of Civil Procedure and that all objections except as to form of questions or answers are *reserved until the time of trial.* All other formalities required by law for the taking and returning of depositions are waived with the exception that the deponent may read and sign said deposition." [emphasis added]

13. *Froelich v. Northern Pac. Ry. Co.*, 39 N.D. 307, 167 N.W. 366 [1918].

14. 32 Kan. 321, 4 P. 269 [1884].

15. A statute adopted from another state which, when carried into our law, had received a construction by the highest court of that state, is presumed adopted as so construed. *Conwill v. Eldridge*, 71 Okl. 223, 177 P. 79 [1918]; *Byrd v. State*, 99 Okl. 165, 226 P. 362 [1924]; *In re Fletcher's Estate*, Okl., 308 P.2d 304 [1957]. Kansas decisions are well-nigh conclusive on interpretation of early statutes adopted from that state. *Chesmore v. Chesmore*, Okl., 484 P.2d 516, 518 [1971].

16. See the text of the stipulation, supra note 12.

case."[17] It is therefore clear that the defendant was not compelled by our rules of civil procedure to make its appearance at the deposition-taking if it did not choose so to do.

In summary, the firm contours of the applicable Oklahoma legal norm which emerge from a review of our statutes and the uninterrupted line of decisional law are that a defendant's pre-service attendance and participation at deposition-taking addressed to the merits of the controversy, when unprotected by a filed and pending jurisdictional challenge or by some appropriate reservation in the stipulation entered into before the deposition hearing, constitutes a voluntary appearance equivalent to service of constitutionally-acceptable court process within the meaning of 12 O.S.1971 § 162.[18]

Defendant's motion to vacate, when considered in the light of its voluntary appearance [not shown earlier on the face of the judgment roll], presented but a single ground for vacation—that of "irregularity in obtaining a judgment."[19] While the defendant's motion was in this one respect meritorious and timely made within the three-year limit provided by 12 O.S.1971 § 1038, it did not entitle it to a release from the action but only to a vacation of the challenged default judgment.

I would therefore hold that [a] *the out-of-state corporate defendant is in court as a result of its prior voluntary appearance*, [b] the order refusing to vacate the judgment should be reversed on the grounds of "irregularity" in its procurement, within the meaning of 12 O.S.1971 § 1031, subdiv. 3, due to a violation of Rule 10 and [c] cause should be remanded for further proceedings.

**17.** Although the deposition appearance of defendant's president occurred *before* the enactment of 12 O.S.Supp.1979 § 390.1, the applicable terms of that statute, paraphrased in the text, were merely declaratory of pre-existing case law and hence govern in this case.

**18.** There is no federal due-process infirmity in state-law recognition that one's voluntary presence and participation in court proceedings may constitute voluntary appearance equivalent to service of process. *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 [1940].

**19.** Failure to comply with Rule 10 may be deemed "an irregularity" within 12 O.S.1971 § 1031, subdiv. 3; *Le Roi Co. v. Grimes*, 193 Okl. 430, 144 P.2d 973 [1944].