## SOMMERS v. GOULDEN.

No. 19648. Opinion Filed Dec. 23, 1930.

McGuire, Marshall & Bodovitz, for plaintiff in error.

Bailey E. Bell, A. Clayton Sinclair, and T. A. Aggas, for defendant in error.

HEFNER, J. A. Goulden, the defendant in error, as plaintiff, brought this action against J. E. Sommers, the plaintiff in error, as defendant, in the district court of Tulsa county. The plaintiff's petition declared upon a promissory note made by the defendant to one A. S. Leecraft, as payee, which was indorsed before maturity to the plaintiff. It was alleged that the sum of $490 with interest and attorney's fees was due thereon, and judgment therefor was sought. The defendant denied the allegations in the petition and alleged as an affirmative defense that the note was procured by certain fraudulent representations made by the payee therein.

The determinative question presented here is whether or not the note was negotiable. If it was a negotiable instrument, within the provisions of our law defining negotiable instruments, the defenses of fraud pleaded by the defendant would be unavailing. If, on the other hand, the note was nonnegotiable, the defense of fraud interposed by the defendant's answer was a good defense, if proven.

The note was dated September 17, 1917, and was payable 12 months after date to the order of A. S. Leecraft, in the sum of $540. It contains numerous provisions, not necessary to mention here, but our particular attention is drawn to the following sentence contained in the body of the note:

"In case of depreciation in the market value of any security pledged for this obligation, the maker agrees to deposit on demand additional collateral so that the market value shall always be at least 20 per cent. more than the amount of this note, and failing to deposit such additional security, this note shall at the option of the holder be deemed to be due and payable forthwith, anything herein expressed to the contrary notwithstanding, and A. S. Leecraft may immediately reimburse itself by the sale of any and all collateral."

It is claimed that the foregoing clause provides for acceleration of the maturity of the note at the option of the holder thereof in case the maker fails to meet his agreement to deposit additional collateral on holder's demand in the event of depreciation in value of security pledged for payment of the note. By this provision of the note it is claimed two separate and distinct propositions are contained therein, which destroy the negotiability of the instrument. In the first place, in addition to a promise to pay, it is contended the sentence referred to contains an agreement to deposit additional collateral security in case that described in the note depreciates in market value. In the second place, it is claimed upon the failure of the maker for any reason to deposit such additional collateral upon the holder's demand the holder might at his option declare the note due and payable forthwith.

The appellant contends that the above clause in the note destroyed its negotiability.

Whether or not this note is negotiable depends upon the provisions of our statute. Section 7671, C. O. S. 1921, is as follows:

"An instrument to be negotiable must conform to the following requirements:

"First. It must be in writing and signed by the maker or drawer;

"Second. Must contain an unconditional promise or order to pay a sum certain in money;

"Third. Must be payable on demand, or at fixed or determinable future time;

"Fourth. Must be payable to order or to bearer; and

"Fifth. Where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty."

Section 7674 provides that an instrument payable upon a contingency is not negotiable and the happening of the event does not cure the defect. Section 7675 contains provisions which do not affect negotiability, and the section is as follows:

"An instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable. But the negotiable character of an instrument otherwise negotiable is not affected by a provision which:

"First. Authorizes the sale of collateral securities in case the instrument be not paid at maturity; or

"Second. Authorizes a confession of judgment if the instrument be not paid at maturity; or

"Third. Waives the benefit of any law intended for the advantage or protection of the obligor; or

"Fourth. Gives the holder an election to require something to be done in lieu of payment of money.

"But nothing in this section shall validate any provision or stipulation otherwise illegal."

The appellant calls our attention to numerous cases in support of his theory, but no case is cited where the facts are the same as are presented by the case at bar.

Our attention is also called to the case of Oklahoma State Bank v. First Nat. Bank of Grandfield, 108 Okla. 272, 236 Pac. 581. There this court held that a note which provided that the payee was fully authorized to proceed to collect the note at any time when he believed himself insecure was non-negotiable. In the body of the opinion it was said:

"Counsel for plaintiff in error, in support of their contention that said note is negotiable, cite many cases from other states, an examination of which discloses that they were decided either prior to the adoption of the Uniform Negotiable Instruments Act or that they were based on notes containing a provision for the acceleration of the time of payment, conditional on the performance or nonperformance of certain acts by the maker. These cases are not applicable to the case at bar.

"The clause in the note under consideration gives the payee power to declare it due at any time he deems himself insecure—something over which the maker has no control.

"The question, therefore, for our determination is: What is the effect on negotiability where the payee is given an option to declare a note due before maturity, independent of any default on the part of the maker?"

Here it was clearly held that the clause in the note under consideration gave the payee power to declare it due at any time he felt himself insecure—something over which the maker had no control. That is not the question for our determination in the case at bar. In this case, if the security should suddenly decrease in value, as it often does do, the holder of the note has a right to demand additional security and the maker thereof has the privilege of placing the additional security, in which event the holder of the note cannot declare the note due. It follows that the maker of the note does have the right to control whether or not it shall be declared due. Whereas, in the Oklahoma State Bank Case he had not that right.

The defendant in error calls our attention to numerous cases which uphold his theory; the one more nearly in point is that of West Point Banking Co. v. Gaunt (Tenn.) 34 A. L. R. 862, 262 S. W. 38. In that case the note declared upon contained this provision:

"2,500. Nashville, Tenn. March 1, 1916.

"One (1) year after date, I promise to pay to the order of Claiborne N. Bryan, two thousand five hundred and no /100 dollars, without defalcation, for value received; and do hereby pledge with the holder hereof as collateral security forty (40) shares of preferred stock in the First Amortization Mortgage & Bond Co. of America—With interest from date—and do agree on demand to deposit with said holders such additional security as they may from time to time require, should the security hereby pledged become unsatisfactory or less valuable, and in default thereof this note shall instantly become due and payable. * * *"

In the body of the opinion the court said:

"It is urged that the chancellor should have held that said notes were nonnegotiable, on account of the agreement contained in them that, in the event the maker should fail or refuse to deposit with the

holder thereof such additional security as the holder might from time to time require, should the security pledged become unsatisfactory or less valuable, and in default thereof, said note should become due and payable. * * *"

And again the court uses this language:

"Without citation of further authority, we are inclined to adopt the view that the conditions relied on as destroying the negotiable character of this note do not accomplish that purpose. The essential things pointed out in section one of the act are: (1) That the instrument must be in writing, signed by the maker; (2) must contain an unconditional promise to pay a sum certain in money: (3) must be payable on demand or at a fixed future time; (4) must be payable to the order of a specified person or to bearer. And the independent promise in this note pledging the holder upon demand to put up additional collateral did not substantially affect any of these requirements. The promise to strengthen the collateral under penalty of the note maturing at once did not change the date of its maturity any more than would the provision in the note payable in installments that upon default in the payment of the installment the whole should become due."

The Tennessee court, after a very careful review of the various decisions construing the Uniform Negotiable Instruments Law, held that the note was negotiable, and we think its holding was correct. In the case at bar the maker agreed that in case of depreciation in market value of any security pledged he would deposit, on demand, additional collateral so that the market value should always be at least 20 per cent. more than the amount of the note. This does not leave the payee or holder of the note an option to declare the note due at any time as in his judgment might seem best. The agreement was that the collateral should always be at least 20 per cent. more than the amount of the note. If the holder should undertake to declare the note due, the maker would have a right to be heard upon the question as to whether or not the market value of the collateral was at least 20 per cent. more than the amount of the note. Before the holder of the note could recover hereon before its due date it would be necessary for him to allege and prove that the collateral was less than 20 per cent. more than the amount of the note. It is therefore not within the power of the payee to declare the note due at any time he deems himself insecure. The maker and the payee made a binding agreement that the market value of the collateral should always be at least 20 per cent. more than the amount of the note, and it is not left to the judgment of the holder of the note to determine this question.

The trial court, after very careful hearing and analysis of the various authorities, held that the inclusion in a promissory note of a provision to the effect that it should mature upon the failure of the maker to advance additional collateral prior to maturity in event the market value therefor had decreased to where it was not equal to 20 per cent. more than the amount of the note did not render the note nonnegotiable. In this we think it was correct, and its judgment is affirmed.

LESTER, V. C. J., and CLARK, SWINDALL, and ANDREWS, JJ., concur. MASON, C. J., and HUNT, RILEY, and CULLISON, JJ., absent.

Note.—See under (1) anno. 34 A. L. R. 890; 3 R. C. L. p. 910; R. C. L. Perm. Supp. p. 917.