## JENNINGS v. SECURITIES INV. CO.

No. 19871. Opinion Filed July 21, 1931.

Holcombe & Lohman, for plaintiff in error.

Yancey & Fist, for defendant in error.

KORNEGAY, J. This is a proceeding in error from the district court of Osage county; Honorable Jesse J. Worten, trial judge. The petition was filed by the Securities Investment Company, a corporation, to recover of and from the defendant amounts due on a series of notes maturing one month apart that were executed by the defendant, V. H.

Jennings, to Brecht Butchers' Supply Company, and indorsed without recourse by the Brecht Butchers' Supply Company, and claimed by the Securities Investment Company to have been bought by it before maturity, and to be held by it at the time of the filing of the suit.

There were 18 causes of action upon the notes, and, as a 19th cause of action, the plaintiff declared upon a sales contract alleged to have been a part of the same transaction as the executing of the notes. The allegation was made that by virtue of buying these notes, it also bought the sales contract, and it relied in its petition on a clause in each of the notes making the other notes secured by the sales contract due on default in payment of any other notes. It further alleged that none of the notes had been paid, and that the plaintiff therefore was entitled to foreclose its chattel mortgage, and it desired a foreclosure of the mortgage.

The notes were dated at Pawhuska, Okla., and had on them "No protest," and were due July 1, 1926, and at intervals of one month thereafter. A sample of the notes sued on is as follows:

"$49.76 No. Protest, Pawhuska, Okla. May 27, 1926 578

"July 1, 1926 after date ——— promise to pay to the

"Order of Gus V. Brecht Butchers' Supply Co. of St. Louis, Mo.

"Forty-nine and 76/100 ———— Dollars.

"With interest from June 1, 1926, at 6 per cent. per annum until paid, and if not paid at maturity and collected by an attorney or by legal proceedings an additional sum of a reasonable amount as attorney's fees, for value received, negotiable and payable without defalcation or discount, payable at First Natl. Bank.

"This note, secured by chattel mortgage, is one of a series of notes, all of which are to become due and payable upon the failure to pay this note at maturity.

"No 14767 Due 7-1-26 V. H. Jennings. "(Endorsed):

"Without Recourse Gus V. Brecht Butchers' Supply Co., R. K. Lowry, Asst. Treasurer, OK.

"Pay to the Order of First Natl. Bank, Securities Investment Co. of St. Louis."

The defendant filed a demurrer, but it was overruled, and the defendant excepted. An answer was filed, in which the execution of the notes and delivery of contract were admitted, but pleaded failure of consideration. The ownership of the notes was denied. It was pleaded that the plaintiff was

a corporation, organized for the purpose of holding notes and securities of the Brecht Butchers' Supply Company and collecting them. It was further alleged that the plaintiff paid nothing for the notes, and they were not indorsed in due course, and the plaintiff was not an innocent purchaser for value, but had full knowledge of the defects in the notes and contract, and that the plaintiff was owned and controlled by the Brecht Butchers' Supply Company, and the stockholders were the same.

It was further pleaded that the consideration had failed; that the contract was for the purpose of placing an electrically operated display case in the defendant's place of business; that the defendant was unfamiliar with it, and knew nothing of its merits, but it was purchased on trial, and was represented to be suitable; that the machine was shipped with bill of lading attached, and defendant was required to pay $100 before he could get it delivered; that it was placed in his place of business for 30 days' trial; that, on its being tried, it failed to work; that, in order for it to work satisfactorily, it was required to be airtight; that it was so constructed that the fastenings by the natural vibrations of the motor became disjointed, and it failed to freeze the meat, and a sweat and steam settled on the glass that was intended for display purposes; that the machine was useless; that notice was given at once of the condition of the machine and the Brecht Company desired an opportunity to adjust and perfect the machine, but the Brecht Company was unable to do so. The company was requested to refund the money paid and to take the machine. Implied warranty was also relied upon, and it was averred that the machine was worthless. This was verified.

Reply was made to it, which was a general denial. The case came on for trial. Opening statements were made. It was claimed on behalf of the plaintiff that after the sale was made, the notes were transferred in regular order to the purchaser in good faith before the notes matured. Amount paid for the notes was not stated in the opening statement of the plaintiff.

The defendant made his opening statement setting up practically the same things that were set up in his pleading, and alleging that the purchase price was $1,095, and $200 of this was allowed for the old box, and he was to be allowed to try the new box for 30 days. The business was transacted through Courtney & Company at Tulsa, the agents of the Brecht Company. On the 27th of May, the box was shipped and delivered at Pawhuska, with bill of lading attached and accompanied by draft for $100; that Courtney & Company instructed them to pay the $100, and execute the notes and put the property on trial, and that if, at the end of the time, it was not satisfactory, he would not need to take it; that before the 30 days was up, the box was found to be unsatisfactory; that, after working on it, they could not do anything with it; that Courtney & Company returned the $100, and released any claim they had on the old box, and Jennings was out $40 for freight and $12.52 for insurance. It was claimed that the plaintiff bought the property with the full knowledge of the contract, and during the 30 days' trial period; that the defendant did not claim the box.

Under these conditions the Securities Investment Company opened the case and offered a deposition of the treasurer. He deposed as to the office of the Securities Investment Company being 506 Olive St., St. Louis, Mo., and that it was a Delaware corporation. That there were no common stockholders in the plaintiff and the original payee, and that the only connection was that the Securities Investment Company had purchased a large number of promissory notes from the Brecht Butchers' Supply Company. That the supply company was engaged in the manufacturing of refrigerators and freezer display cases. That the Securities Investment Company had been purchasing such notes from the Brecht Butchers' Supply Company since the early part of 1925, and had bought over 1,000 series of customer's notes. That he had handled the purchase. The notes were bought on the 10th of June, 1926, and paid $756.27 for them. That they were holding 10 per cent. as a reserve against possible loss. That they were paid for by a check covering some more purchases. He stated that he examined the security for the notes at the time of purchase. With the exhibition of the contract, the plaintiff rested.

The defendant took the stand and undertook to describe the kind and character of the piece of goods that he got. Objections were raised, and the witness was allowed to state what it was, and that was about as far as he got. He was not allowed to state the purpose for which the purchased box was used. The court says at page 111:

"The Court: I am going to sustain the position of the plaintiff, holding that these plaintiffs were purchasers in due course of business for valuable consideration of these notes in question before maturity, and further hold that under such state of facts that

the defendant in this case cannot complain of failure of consideration."

He was permitted, however, to answer that he had never seen one of these boxes before, and did not know how it operated, but was not permitted to state what his purpose was in buying it, but did say he bought it for the purpose of freezing and displaying his meat. He stated the box was shipped by freight, but the terms and conditions he was not permitted to tell. The offer was made that it was shipped accompanied by a bill of lading and draft for $100, and before he could take possession of the property, it was necessary to pay this draft and execute the notes, which he did.

He was permitted to say that he put the box in his place of business, but not how long it stayed. The offer was made to prove that he put it there in order to try it for 30 days pursuant to the written contract; that during that 30 days he ascertained the box was not satisfactory, and would not do what it was represented to do. He undertook to tell what he did then, and offered to establish that he notified the agents. They requested him to allow mechanics to work on the box, and that pursuant to request he kept the box in his place of business for a period of three months and they were not able to do anything with it. He notified the Brecht Butchers' Supply Company. They came and worked it over and s ill it would not do any good. He notified the Brecht Company that the box was at their disposal, and he put it in storage. An offer was made to establish that he got no consideration. He offered to establish that the old box was to be taken in at $200. He tried to establish that he had exercised no claim over it after notification.

The plaintiff moved for a directed verdict, and the court allowed it, stating that the undisputed facts were that the plaintiff purchased the notes in question and paid a valuable consideration for them in due course of business and before maturity. An instructed verdict was returned, followed by such verdict and a motion for a new trial. The court fixed an attorney's fee at $125, and rendered judgment accordingly. The plaintiff in error excepted and filed his motion for a new trial, and it was overruled. He gave notice of appeal, and it is here for disposition.

Assignments go to the refusal to hear the testimony of Jennings, and to directing verdict, and verdict of jury being contrary to law.

The first proposition in this case, as it seems to us, is whether or not, if the Brecht Company was suing upon the notes, the defendant would have a right to defeat them on account of the condition of the machine. Under the proof offered and under the contract, we think most clearly that the Brecht Company would not have a right of recovery.

The next question that arises is, whether or not, by virtue of the transfer to the Securities Investment Company, that it is in any better position than the Brecht Company. The fact that the notes might be negotiable would not affect the matter, if the plaintiff knew at the time it acquired the paper of the failure of consideration. Undoubtedly, under the contract that the plaintiff bought, along with the notes and securing it, and on which they rely, the plaintiff took the notes with full knowledge that the consideration for them was this box, and that the defendant should have a right to try the box for 30 days to see whether it would come up to the implied warranty of fitness that every manufacturer makes in selling his wares. The notes were bought before the 30 days expired. At the time of buying them and parting with value, if the plaintiff did so, as is indicated by the deposition, the plaintiff knew by the contract itself what the consideration was, and that the consideration was merely this ice box, and that the defendant had 30 days in which to test it before the trade would be completed and the right to the notes should become effective.

From the testimony offered in this case, the Brecht Company, though getting possession of the notes, would not have been entitled to hold them as against the defendant, Jennings, or to collect them at the time they conveyed them to the plaintiff. By the terms of each note, it is shown that its time of payment would be varied by the failure to pay the first note. The sales contract is referred to in each note as a chattel mortgage. The conditions of that sales contract were known to the plaintiff when it bought. It was thereby put on inquiry as to the conditions surrounding the delivery when it bought the notes. The sale contract referred to in the notes is as follows:

"This contract states the entire agreement for the purchase of said goods and is not modified by any verbal agreement. It is subject to the approval of the home office of the Brecht Company, and this contract shall be construed in accordance with the laws of the state of Missouri.

"The Brecht Company is not responsible

for delay in the completion of this contract, caused by fires, floods, unusual circumstances attributable to war conditions, or unforeseen accidents beyond its control, and in such case the time for completion of this contract shall be proportionately extended.

"If goods are not shipped on or before the shipping date given above, the company agrees in fulfillment of its contract for delivery to extend the time of payment for a period equal to such delay. There shall be no alternations or additions to the work herein specified unless agreed upon in writing. It is agreed that the title to the property covered by this contract no matter whether, or by what manner or degree, it may be attached to the realty, shall not pass to the purchaser until the entire purchase price thereof, and any note or notes, including renewals, given therefor and all judgments for the whole or any part thereof is paid, and such property shall not be removed from the building in which it is first installed, without the consent of the Brecht Company, and in case of default in any of the payments provided for, or failure to execute and deliver notes, or other papers, when requested, or upon sale or attempted sale of said property or parts of same, the purchaser agrees that all amounts unpaid, whether evidenced by notes or otherwise, shall at once become due and payable, and the Brecht Company may proceed to collect the same at once, in which case the purchaser shall, in addition to the purchase price, become indebted to the Brecht Company for and pay all attorney fees and expenses which the Brecht Company may incur in its effort to collect such indebtedness and its efforts to recover possession of the equipment herein contracted for, and the Brecht Company, at its option, for its protection, is hereby authorized to remove the equipment covered by this contract wherever found, and the Brecht Company shall not be liable in any action at law on the part of said purchaser for the removal of said property, nor for the repayment of any money or moneys which may have been made by the purchaser on any part of such equipment, but, however, the Brecht Company herein agrees to repay the purchaser any amount it receives from any resale of said equipment in excess of moneys due it.

"It is also agreed that the purchaser shall pay any and all taxes, levies, license fees, or assessments made, levied, or assessed against the goods covered by this contract by any legal authority, so long as this contract shall be in existence and should the Brecht Company be required to pay any such items, the same shall be added to the amount hereby agreed to be paid for said goods, and shall in all respects be considered as a part of the purchase price thereof.

"In case of any damage to said property by fire, water, or any other cause, said purchaser agrees to pay to said the Brecht Company, the amount of such damage, and in case of destruction thereof from any cause, to pay the above valuation, less any portion of the purchase price which may have been paid, and said purchaser agrees to have same fully insured in standard insurance companies at his own expense, with loss payable to said the Brecht Company, as its interest may appear. The purchaser expressly directs the Brecht Company to procure such insurance at the expense of and for the account of the purchaser.

"The use of the property described herein, or any portion thereof, for a period of ten days, constitute an acceptance of the same as complying with all the terms and specifications of this contract and all claims for damages, errors, or shortage not filed within that time are thereby waived.

"It is agreed that if for any reason at the request of the purchaser goods are held more than 30 days after shipping date, that a date of 30 days following the original designated date of shipment, shall be considered as the date of shipment and any payment or payments shall be figured from that date.

"The responsibility of the Brecht Company on this contract shall cease upon the delivery of the goods in good condition to the railroad company, and, the Brecht Company shall not be liable for consequential damages from any cause whatsoever.

"This contract is not subject to cancellation.

| Quantity | Number | Description | Price |
|---|---|---|---|
| 1 | 834 | M. U. Brechold Case 10 ft. (Brecht Automatic Freezer Display Case) | $1,095.00 |

"Copy.

"30 days trial.

"These Electric Current Specifications must be filled in and OK'd by Customer.

Direct              Voltage

Alternating  yes   voltage 110

Phase Single        Cycle 60

"Gus V. Brecht Butchers' Supply Co.

"In consideration whereof I agree to pay The Brecht Company Ten Hundred Ninety-five and no/100 Dollars ($1,095.00) for said Goods, F. O. B. factory, as follows: $100.00 Cash Payment with Order. $100.00 upon presentation of Bill of Lading through First National Bank Balance of $895 in 18 equal payments. We further agree to execute and deliver to the Brecht Company interest bearing notes to evidence the aforesaid payments and to execute and deliver to the Brecht Company as and whenever requested so to do, any and all other papers in form satisfactory to the Brecht

Company to cover the property herein specified to make it security for any unpaid portion of the purchase price.

"The Brecht Company.

"Approved Gus. V. Brecht Bu chers' Supply Co., Inc. have read the foregoing contract and have accepted a copy.

"Per R. K. Lowry _____ of the same from your salesman:

"Date May 11, 1926
"[Signed]     V. H. Jennings,
"Purchaser."

It will be observed from this that 30 days' trial was allowed. The notes declared on refer to this contract, and are really part of it. There are several provisions in the notes that are not usually incorporated in negotiable paper. The time of the beginning for the payment of interest is different from the date of the note. It calls for "an additional sum of a reasonable amount as attorneys' fees." The note carries with it an accelerating clause, based not on its own provisions, but by reference to other documents, so that a failure to pay any one of a series makes the note due, and so with each of the 18 notes, so that there were 17 of the notes whose due dates, by their terms, were not fixed. The one who promises to pay is left out, the words ordinarily "I promise to pay," being "____ promise to pay." Prior to the enactment of the Negotiable Instrument statute, any agreement for a fixed or floating attorney fee destroyed the negotiability of the note. See section 4052, Revised Laws of 1910, as follows:

"4052. When Sum Payable is a Sum Certain. The sum payable is a sum certain within the meaning of this chapter; although it is to be paid:

"First. With interest; or

"Second. By stated installments; or

"Third. By stated installments, with a provision that upon default in payment of any installment or of interest, the whole shall become due; or

"Fourth. With exchange, whether at a fixed rate or at the current rate; or

"Fifth. With costs of collection or an attorney's fee, in case payment shall not be made at maturity."

Section 4053 is as follows:

"4053. When Unqualified Order is Unconditional. An unqualified order or promise to pay is unconditional within the meaning of this chapter, though coupled with:

"First. An indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount; or

"Second. A statement of the transaction which gives rise to the instrument.

"But an order or promise to pay out of a particular fund is not unconditional."

Section 4051 is as follows:

"4051. Requirements of Negotiable Instruments. An instrument to be negotiable must conform to the following requirements:

"First. It must be in writing and signed by the maker or drawer;

'Second. Must contain an unconditional promise or order to pay a sum certain in money;

"Third. Must be payable on demand, or at a fixed or determinable future time;

"Fourth. Must be payable to order or to bearer; and

"Fifth. Where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty."

The codifiers of the 1910 Laws were required to annotate the statutes, and they did so, and as done the laws were adopted. See acts approved March 11, 1909, March 3, 1911, March 15, 1911.

Under section 4052, we find the following annotation:

"Attorney's Fee—Non-Negotiable. So held uniformly prior to passage of this act. Farmers' National Bank v. McCall, 25 Okla. 600, 106 Pac. 866. Following 12 Okla. 516, 74 Pac. 946; 14 Okla. 605, 78 Pac. 321; 20 Okla. 837, 95 Pac. 230; 16 L. R. A. (N. S.) 410.

"Same—Rule Changed by This Section. Id.

"Same—Stipulation in Mortgage Does Not Affect Negotiability of Note. Authorities collated. However, when provisions of mortgage are by direct stipulation in note made a part thereof, same may be rendered non-negotiable. Id. Citing 4 Kan. App. 716, 46 Pac. 720; 5 Kan. App. 326, 48 Pac. 607; 7 Kan. App. 562, 52 Pac. 59."

The same line of reasoning is now applicable to ascertain certainty in amount as was applicable before the change. See Cotton v. John Deere Plow Co., 14 Okla. 605, 78 Pac. 321, where the court says:

"Manifestly, one of the essential qualities of negotiable promissory note is absolute certainty as to the sum of money to be paid, a certainty which must appear on the face of the note. Therefore, if any part of the amount is dependent upon any contingency, or where it is necessary to offer proof other than the instrument itself, the negotiable character of the instrument is destroyed. In other words, the instrument must not contain any condition that is not capable of certainty of fulfillment."

We think, also, that the time of maturity

of this paper is uncertain, within the meaning of section 4054, as the maturity of each note is made to depend on the failure to meet at maturity 17 other notes maturing at different times, providing the maker does not meet each at maturity. Sections 4055 and 4056 do not make an exception applicable here. This court, in Oklahoma State Bank v. First National Bank, 108 Okla. 272, 236 Pac. 581, says:

"The question, therefore, for our determination is: What is the effect on negotiability where the payee is given an option to declare a note due before maturity, independent of any default on the part of the maker?

"We have not been able to find where this court has ever passed on this question directly, although in the case of Westlake v. Cooper, 69 Okla. 212, 171 Pac. 859, it was held that the negotiability of a promissory note is not destroyed by interpolating provisions for accelerating its maturity made in the accompanying mortgage, but not contained in such note. The opinion infers that a contrary rule would have been announced if the clause accelerating maturity had been in the note and not merely in the mortgage.

"In 3 R. C. L. p. 910, the general rule is stated as follows:

" 'But a note is not negotiable which gives the payee power to declare it due at any time he deems himself insecure'."

Here the amount of attorney's fees depended largely upon the temperament of the trier as to what was "reasonable." A most variable standard. Here the maturity depended on the maker's ability to pay a series of notes, not described, but which we know were on the same form, with about 17 permutations. The notes were on forms provided. We do not think the notes were negotiable paper. It is very evident that the defendant below knew little about "negotiability," and never intended to help the Butcher Supply Company float the paper. It is further evident that the supply company did not act in good faith with the defendant. It is so apparent that it is almost transparent that the plaintiff, when it bought the paper, claimed to be negotiable, before the 30 days' trial was completed, and held back 10 per cent. to cover loss, and also 5½ per cent. on paper due in monthly installments, maturing the first 20 days from its purchase, was getting extraordinary privileges. It certainly was on inquiry, and in all probability knew what was happening.

Under these conditions we think the court erred in excluding the testimony offered, and in directing a verdict. The cause is reversed, with directions to set aside the verdict and grant a new trial.

LESTER, C. J., and CLARK, V. C. J., concur. SWINDALL and McNEILL, JJ., concur in result. HEFNER, CULLISON, and ANDREWS, JJ., dissent. RILEY, J., absent.

---

SWINDALL, J. (concurring in the conclusion). I concur in the conclusion reached in the majority opinion. I am of the opinion that the record shows conclusively that when the defendant in error took an assignment of the contract, and in the action in the trial court declared upon the notes and the contract, and alleged, "that as a part and parcel of the same transaction as the executing of said series of notes, from 14767 to 14784, inclusive, a certain sales contract, which in fact is a chattel mortgage, was executed and delivered by the defendant (plaintiff in error), by the terms of which contract the title in and to the property therein described, would remain in the Gus V. Brecht Butchers' Supply Company, until all the installment notes were paid, * * *" it took the notes with full notice that they were executed and delivered according to the terms of an executory contract under the provisions of which the purchaser of the property described in the contract had the privilege of using the property to determine whether or not the same was reasonably fit for the purposes for which it was manufactured and sold, and if found not to comply with the contract of sale, the purchaser had the right to return the property to the seller. So, the defendant in error, under the circumstances of this case, was not an innocent purchaser of the notes for value before the maturity thereof and without notice, but took the notes governed by the terms and conditions of the contract, which in my opinion was not a chattel mortgage, but was an executory contract under the terms of which the purchaser received the property from the seller with the privilege of trying the same, and if found not to comply with the contract, the purchaser could return the same to the seller within the time specified and according to the terms of the contract.

I therefore concur in the conclusion reached in the opinion prepared by Mr. Justice Kornegay, and concurred in by Chief Justice Lester and Vice Chief Justice Clark, for the reason that, in my opinion, the defendant, plaintiff in error, pleaded a defense, and is entitled to offer his proof in support thereof.

I do not think the issues relative to the notes providing for a reasonable attorney's fee instead of a definite sum, or the issue relative to the failure of the maker to pay one or more notes maturing all unpaid notes,

are involved in this case, and I do not concur in that portion of the majority opinion holding such clauses in the notes make the same nonnegotiable.

I am authorized to say that Mr. Justice HEFNER and Mr. Justice McNEILL concur in this conclusion.