MORTGAGE BOND CO. et al. v. STEPHENS, Trustee.

No. 26849.  June 22, 1937.

Rehearing Denied Nov. 2, 1937.

Leon C. Phillips, Carter Smith, Joe Chambers, and Jack Paden, for plaintiffs in error.

Fred L. Hoyt and J. A. Denny, for defendant in error.

B. B. Blakeney, Chas. West, S. A. Horton, and B. B. Blakeney, Jr. amici curiae.

PHELPS, J. This is an appeal from the district court of Tulsa county. The cause was tried before Hon. Jesse J. Worten, assigned judge, without the intervention of a jury. From a judgment in favor of the plaintiff foreclosing the mortgage sued upon and appointing a receiver, the defendants, Mortgage Bond Company and the Industrial Building & Loan Association, appeal.

Herein the parties will be referred to as they appeared in the court below, that is, the plaintiffs in error as defendants and the defendant in error as plaintiff. Plaintiff, as trustee, brought suit to establish a lien against certain real estate located in the city of Tulsa by virtue of a trust deed or mortgage; no personal judgment was sought.

The facts are substantially as follows:

Prior to the execution of the note and mortgage sued on, the Industrial Building & Loan Association was the owner of the property involved. Subsequently, the property was conveyed to the Mortgage Bond Company for a consideration of $19,000; $1,000 was paid in cash and a mortgage was executed on the property for the balance of the consideration. The Mortgage Bond Company inaugurated a plan for the construction of an apartment building on the property and negotiated the loan involved in these proceedings. Mr. W. L. Reed was president of the Mortgage Bond Company and was also secretary-manager of the Industrial Building & Loan Association. After the construction of the building had proceeded to a certain point, negotiations were entered into by the Mortgage Bond Company with the Phoenix Mortgage Company, Tulsa, Okla., and the Godfrey Investment Com-

pany, Oklahoma City, Okla., to secure a loan on the property. Both the Phoenix Mortgage Company and the Godfrey Investment Company were domestic corporations engaged in real estate and brokerage business. In these negotiations it was agreed that the Mortgage Bond Company would pay the brokerage concern a bonus, or commission of $13,500 to obtain the loan. Several years prior to these negotiations, the Godfrey Investment Company had entered into a written contract with the Mortgage Security Corporation of America, Norfolk Va., wherein it was agreed that the Godfrey Investment Company would dispose of certain of its mortgages obtained from borrowers in the course of its business to the Mortgage Security Corporation. In this agreement it was specifically provided that the Godfrey Investment Company was not to be considered an agent of the Mortgage Security Corporation of America in any of the transactions under the agreement. The Mortgage Security Corporation was likewise in the brokerage business at Norfolk, Va. The negotiations finally resulted in the Mortgage Bond Company making written application to the Godfrey Investment Company for a loan of $90,000. The note was executed by the Mortgage Bond Company at Tulsa, April 1, 1928, and was payable to bearer April 1, 1938, at the principal office of the Union Trust Company of Maryland, Baltimore, Md., upon representation and surrender of the original 20 coupons representing interest and installments of principal. The note bears interest at the rate of 6 per cent. per annum, principal installments and interest payable semiannually. Incorporated in the note is the following:

"This note and annexed coupons are secured by deed of trust or mortgage of even date herewith to Union Trust Company of Maryland, Baltimore, Maryland, and American-First Trust Company in Oklahoma City City, Oklahoma, Trustees, and recorded in the office of the county clerk of the county of Tulsa, state of Oklahoma, to which reference is hereby made with the same force and effect as if incorporated in full herein."

As security for the note, the Mortgage Bond Company, on April 1, 1928, executed its deed of trust or mortgage to the American-First Trust Company in Oklahoma City and the Union Trust Company of Maryland, as trustees. In said mortgage the American-First Trust Company is referred to as "local trustee" and the Union Trust Company as "foreign trustee." Conveyance is made to the American-First Trust Com-

pany in Oklahoma City, the local trustee, or its survivor or successor.

Certain provisions of the mortgage are specifically challenged by the defendants as rendering the instruments nonnegotiable. Such provisions are substantially as follows:

(1) That mortgagors, during the existence of the mortgage, will keep the improvements on the property insured against loss by fire or tornado in insurance companies authorized to do business in Oklahoma, and approved by the foreign trustee in an amount of not less than $90,000; such policies to be payable, in case of loss, to the foreign trustee: the policies, and renewals, to be delivered to the foreign trustee. In case of loss mortgagors may restore or rebuild injured or destroyed property under general supervision of foreign trustee in the expenditure of the money. Authority of foreign trustee to apply on the indebtedness covered by the mortgage any excess recovery on insurance policies.

(2) Mortgagor's agreement to warrant specially title to the property mortgaged, and to take, or cause to be taken, legal proceedings as may appear at any time to the trustees desirable, to perfect the title in the local trustee.

(3) That upon failure or breach of any covenants in the mortgage, trustee may with or without notice, pay taxes, assessments, levies and other charges against the property; make necessary repairs, renew insurance policies, cause steps to be taken to prevent waste, impairment or deterioration of property and to perfect title in local trustee. Any sums thus expended to become part of the debt secured by the mortgage and to be repaid by the mortgagors.

(4) In the event of the enactment, after the date hereof, of any federal or state law, deducting from the value of the land for the purpose of taxation, any lien thereon or change in any way, the laws for the taxation of mortgages or security deeds or debts secured by mortgages on security deeds or the manner of the collection of any such taxes, so as to affect this instrument or the debt hereby secured, the foreign trustee shall have the right to give 60 days' notice in writing to the mortgagors, or to the then record owner of the premises herein described, that the said trustee requires payment at the end of 60 days after the date of such notice, and if such notice shall be given, the debt hereby secured shall become due and payable and collectible at the expiration of such 60 days there-

after, anything herein or in said notes to the contrary notwithstanding, and the rights of the second parties shall be the same under such maturity as if the debt had matured according to the original terms and conditions of said notes and this mortgage and trust, such notice shall be deemed to have been duly given if personally delivered to the first parties or the record owner or mailed to the mortgagors or said owner at his or their address last known to the second parties.

The note and mortgage were guaranteed by the National Surety Company and by an instrument in writing executed by W. L. Reed and Geo. C. Burgin. In order that the mortgage might become a first lien, the Industrial Building & Loan Association released its mortgage and took back a second mortgage on the property. The Industrial Building & Loan Association joins the Mortgage Bond Company in contesting the validity of the note and mortgage sued on. Judgment was rendered declaring the mortgage of the Industrial Building & Loan Association a second lien on the property.

It appears that the note and mortgage sued on were executed on forms provided by the Mortgage Security Corporation of America. The loan was paid out by the Mortgage Security Corporation of America by mailing its check or draft to the Central National Bank of Tulsa, payable to the Godfrey Investment Company and Hoyt & Stephens, attorneys. The amount remitted by the Mortgage Security Corporation was $76,500, which sum, defendants contend, should be considered as the amount of the loan in determining the question of usury. At the time of this remittance the building was approximately one-third completed and the proceeds of the loan were used to liquidate certain mechanics' and materialmen's liens and otherwise expended in the completion of the apartment. The agreed bonus or commission of $13,500 was paid out as follows: The Mortgage Security Corporation of America discounted the loan 7½ per cent., or $6,750. The remaining $6,750 was sent by the Mortgage Security Corporation direct to the Godfrey Investment Company as its commission in negotiating the loan. This commission was divided between the Godfrey Investment Company and the Phoenix Mortgage Company.

Plaintiff explains the manner of paying out on this loan as being different from that of any other loan acquired by it, as follows: That this was what is known as a construction loan with attendant liability for liens of various kinds. Also, that the Godfrey Investment Company was in a straitened condition financially and was threatened with receivership, which subsequently occurred.

It appears that for a time after the execution of the note and mortgage, the mortgagors in making payment on the loan remitted to the Godfrey Investment Company in Oklahoma City. The amounts remitted were deposited by the Godfrey Investment Company in a bank in Oklahoma City to the credit of the Union Trust Company of Maryland, who, it is alleged, as trustee, was the holder of the note and mortgage sued on. Quadruplicate deposit tickets were made; one of which was mailed to the Union Trust Company, Baltimore, Md., one to the Mortgage Security Corporation of America, Norfolk, Va., one to the Mortgage Bond Company, Tulsa, Okla., and one was retained in the office of the Godfrey Investment Company. The proceeds of the collections made on this loan were withdrawn from the Oklahoma City Bank on order of the Union Trust Company. The Godfrey Investment Company was not financially interested in the Mortgage Security Corporation of America nor was the Mortgage Security Corporation of America financially interested in the Godfrey Investment Company.

Sometime after the execution of the note and mortgage, the American-First Trust Company resigned as local trustee and Roger L. Stephens, plaintiff herein, was appointed its successor. Plaintiffs' petition was filed August 6, 1931, and therein it is alleged that the defendants had made default in the terms of the note and mortgage in that the defendant Mortgage Bond Company had failed and neglected to make the principal payment of $2,700 due April 1, 1931, as required by said note and mortgage, and that because of such default the owner and holder of the note and mortgage was authorized to accelerate the due date thereof. Plaintiff also asked for the appointment of a receiver for the property, which appointment was made at the time of, or soon after, the date of the final judgment.

The answer and cross-petitions of the defendants may be summarized as follows: (1) General denial; (2) denial that the Union Trust Company of Maryland was the owner and holder of the note and mortgage, in due course, before maturity, without full notice of defenses; (3) that the

note and mortgage were procured through fraud or misunderstanding; (4) usury; (5) that the note was not in default; (6) that the Security Corporation of America was not qualified to do business in Oklahoma; (7) that the note and mortgage were void on account of Security Corporation of America's failure to comply with the laws of Oklahoma; (8) that the Godfrey Investment Company in said transaction was the agent of the Security Corporation of America, thereby making said contracts enforceable under the laws of Oklahoma. Defendants further ask that the note and mortgage sued on be declared null and void and that it recover from plaintiff on its counterclaim twice the amount of interest alleged to have been illegally collected, reserved, or received. Plaintiff, in his replies, among other things, alleged that the instruments sued on were purchased by the Security Corporation of America at Norfolk, Va., were approved and accepted in Virginia, and that the purchase of said note and mortgage by the Security Corporation constitutes an act of interstate commerce, and that therefore the laws of Oklahoma relative to foreign corporations doing business in this state have no application to said transactions. Further, that said notes were made payable at the office of the Union Trust Company of Maryland, Baltimore, Md., and that said trust company as trustee purchased said note and mortgage in Baltimore, Md., on the 4th day of December, 1928, for value, in due course, and before maturity.

The trial court rendered judgment for plaintiff. From the judgment and the order overruling motion for new trial, defendants appeal.

Ten assignments of error are presented in this appeal, as follows:

(1) That the court erred in overruling motions for new trial.

(2) That the court erred in not rendering judgment for plaintiffs in error holding that the Mortgage Security Corporation of America, a foreign corporation, was doing business in Oklahoma without complying with sections 9738, 130, and 131, O. S. 1931, and in not holding the contract sued on null and void.

(3) That the court erred in not holding that the contract sued on was governed by the laws of Oklahoma, and that there was usury and vice in said transaction in that $13,500 was charged and retained out of the apparent loan of $90,000, and further erred in not holding that the principal sum

loaned was only $76,500 and not $85,500, and that the plaintiff in error Mortgage Bond Company was entitled to a counterclaim of twice $52,380, which was sufficient to cancel the balance due on the alleged principal of $76,500, and in not holding the notes and contracts sued on void.

(4) That the court erred in the assessments of the amount of recovery.

(5) That the court erred in holding that there was default in payment of the note and mortgage sued on.

(6) That the court erred in excluding competent evidence offered by defendants.

(7) That the judgment of the court is not sustained by any evidence and is contrary to law.

(8) That the court erred in appointing a receiver to take charge of the property covered by the mortgage sued on.

(9) That the court erred in refusing to vacate and discharge said receiver.

(10) That the court erred in refusing to consider the merits of the defenses of the plaintiffs in error wherein it was asserted that Roger L. Stephens, as trustee, was acting as trustee of an assignee of the Mortgage Security Corporation of America, a foreign corporation, on a void contract, and for the further reason that in said application for the appointment of a receiver, plaintiff failed to allege facts sufficient to state a cause of action, and that the evidence presented in support thereof was not sufficient to give grounds for the appointment of a receiver.

We are convinced that the plaintiff had authority to institute and maintain these proceedings. Section 144, O. S. 1931, reads as follows:

"An executor, administrator, guardian, trustee of an express trust, a person with whom, or in whose name, a contract is made for the benefit of another, or a person expressly authorized by statute, may bring an action without joining with him the person for whose benefit it is prosecuted. Officers may sue and be sued in such name as is authorized by law, and official bonds may be sued upon in the same way."

The American-First Trust Company, plaintiff's predecessor in interest, had resigned and plaintiff had been appointed its successor. Plaintiff, as successor trustee, had the right to institute the proceedings to recover on the note and mortgage.

Defendants contend that the note and mortgage sued on are nonnegotiable instru-

ments. The reason for this contention, together with the objectionable portion of the note and mortgage, have hereinbefore been stated.

In support of their contention on this point, defendants cite Central Savings Bank v. Coulter, 236 P. 956, a California case, and Jennings v. Securities Inv. Co., 151 Okla. 32, 1 P. (2d) 687. The California case apparently supports defendants' contention. This case follows the general rule adopted in that state upon the subject discussed. The case of Jennings v. Securities Inv. Co., supra, is not in point. In that case this court held that the instrument sued on was nonnegotiable for one of two reasons: First (as expressed in the main opinion) that under the peculiar wording of the serial notes, the recital "reasonable amount as attorneys fee" was indefinite; second (as expressed in the concurring opinion), that the notes were executed as an executory contract under the provisions of which the purchaser of the property was to determine whether or not the same was reasonably fit for the purpose for which it was manufactured and sold, and if found not to comply with the contract of sale, the purchaser had the right to return the property to the seller. That under these conditions defendant, under his pleadings, had the right to offer proof in support thereof, hence the holder of the note sued on was not an innocent purchaser, for value, before maturity and without notice.

The case of Westlake v. Cooper et al., 69 Okla. 212, 171 P. 859, is in point and is decisive of the question involved. In that case this court said:

"Manifestly, by its own terms, the note in question is expressed to be payable at a fixed period after date, and, independently of the mortgage accompanying it, is a negotiable instrument. Do the provisions of the mortgage render its maturity contingent, and thus affect its negotiability?

"The general rule frequently announced in this jurisdiction is that a note and a mortgage given to secure its payment are construed together (Okla. City Development Co. v. Picard, 44 Okla. 647, 146 P. 31; Sims v. Cent. St. Bank, 56 Okla. 129, 155 P. 878; First Nat. Bank v. Howard, 59 Okla. 237, 158 P. 927); but so far as we are informed, this court has never recognized the doctrine that under such rule the negotiability of a promissory note is destroyed by interpolating the collateral stipulations of an accompanying mortgage not contained in such note. If such were the rule, every note, when secured by mortgage, however simple in its terms, might

be deprived of its otherwise negotiable character.

"It will be noted that the stipulation for acceleration of payment is contained in the mortgage, and not in the notes themselves. The notes are evidence of the debt, fixing the terms and time of its payment. The mortgage gives a lien upon real estate to secure the promise to pay contained in the note, and merely affords an additional remedy for failure to perform such promise; its provisions relating wholly to the security. The holder of the notes might have abandoned the mortgage entirely and sued and recovered on the notes; in which event the fact that a mortgage had been given as security (no matter what provision it contained relative to acceleration of the time of payment of such notes) would have been immaterial and ineffectual."

Illinois Bankers Life Assurance Co. v. Day, 178 Okla. 284, 62 P. (2d) 970, 7 Am. Jur. 833, and cases cited.

The case of Sommers v. Goulden, 147 Okla. 51, 294 P. 175, is pertinent to the facts in the case at bar. In that case we quoted:

"In case of depreciation in the market value of any security pledged for this obligation, the maker agrees to deposit on demand additional collateral so that the market value shall always be at least 20 per cent. more than the amount of this note. and failing to deposit such additional security, this note shall at the option of the holder be deemed to be due and payable forthwith, anything herein expressed to the contrary notwithstanding, and A. S. Leecraft may immediately reimburse itself by the sale of any and all collateral."

There it was contended that the foregoing clause destroyed the negotiability of the note. The court decided otherwise and, in the syllabus, held:

"A promissory note, otherwise negotiable, was not made nonnegotiable because it contained a provision that the maker on demand would deposit additional collateral so that the market value thereof should always be at least 20 per cent. more than the amount of the note, and on failure of the maker to make such deposit the holder of the note was given the option to declare it due."

DeWolf v. Church, 189 Okla. 66, 67 P. (2d) 930.

In view of the authorities, we hold that the instruments sued on are negotiable.

The next question is: Is the contract sued on usurious? Section 9518, O. S. 1931 (a constitutional provision), reads:

"The legal rate of interest shall not ex-

ceed six per cent. in the absence of any contract as to the rate of interest, and by contract, parties may agree upon any rate not to exceed ten per cent. per annum. Said rates of six and ten per cent. shall be, respectively, the legal rate and the maximum contract rates of interest."

Section 9525, O. S. 1931 (a legislative enactment) reads:

"The interest which would become due at the end of a term for which a loan is made, not exceeding one year's interest in all, may be deducted from the loan in advance if the parties thus agree."

The latter section, which is important to the determination of the issues in this case, has been upon the statute books since before statehood. Apparently it has received legislative approval as well as judicial construction.

In the present case the trial court found the $13,500 deduction made from the loan as a commission or bonus exceeded by $4,500 the legal rate of interest for one year at 10 per cent. on the loan of $90,000. The court applied the excess as a credit on the loan and rendered judgment for the plaintiff upon the basis of $85,500, being the amount of the principal on the note as reduced by the credit of $4,500. Does this judgment conform to the law under the facts as they exist in the present case?

On the question of usury a great deal of discussion is built up around the case of Tobin v. Holmboe, 172 Okla. 546, 45 P. (2d) 716. In fact, it is alleged that the trial court based its decision upon that case. In that case, in the syllabus, this court held:

"A contract for the loan of money is usurious when the interest charge agreed to be paid under the terms of the contract exceeds the amount of interest that could be charged for the term of the loan determined on the basis of the maximum legal rate.

"A cash deduction (which is not for expenses that could properly be charged to the borrower) made by the lender at the time a contract for the loan of money is executed is regarded as interest paid in advance, unless such cash deduction is in excess of one year's interest which would become due at the end of the term for which the loan is made. In the event of such an excess deduction, the excess will be subtracted from the principal of the loan as expressed in the face of the loan contract for the purpose of determining the actual amount of the loan and the basis for computing the maximum interest charge under the usury law.

"A promissory note providing for the payment of the principal in installments at specified times and requiring the payment of 'interest on each of said amounts (referring to the installments) * * * until maturity thereof', does not require the payment of future unearned interest in the event the maturity date is hastened by virtue of an accelerated maturity clause contained in the note.

"The acceleration of the maturity of a note under an option contained in the note which operates to require the maker (borrower) to pay in excess of the legal rate of interest for the period of the loan prior to the accelerated maturity does not render the contract usurious when such excessive interest is due to an authorized and legal deduction of interest from the principal made at the time the note was executed."

In the body of the opinion, referring to section 9525, supra, this court said:

"The general rule in this jurisdiction is that money deducted from the face of the note at the time a loan is made should be treated as interest paid in advance and that the face of the note should be regarded as the amount of the loan (Mitchell et al. v. Fisher et al., 168 Okla. 145, 32 P. (2d) 37), unless the amount deducted exceeds one year's interest, in which event the excess, if any, should be treated as a deduction from the face of the note in determining the amount of the loan. Barnhart et ux. v. Richardson, 134 Okla. 19, 272 P. 418."

Pickering v. Taylor, 180 Okla. 96, 67 P. P. (2d) 949.

The case of Tobin v. Holmboe, supra, is replete with authorities sustaining the conclusion arrived at by this court. It would extend this discussion unnecessarily to review the authorities cited by defendants holding contrary to the views expressed herein. In case of conflict between the decisions of this court and those of other jurisdictions, we will adhere to the rules fixed by this court. This is especially true where the contract is susceptible of two constructions. In Mitchell v. Fisher, supra, this court said:

"In determining whether a contract for the payment of money is usurious, if it appears that the contract or transaction is susceptible of two constructions, one lawful and the other unlawful, the former will be adopted. This is on the theory that the parties to the contract have contracted within the law."

It is well to consider what the understanding was between the parties concerning the amount of the loan. Mr. Reed,

president of the Mortgage Bond Company, mortgagor, in his testimony admitted that he executed the application for the loan; also the note and mortgage and the guarantee agreement, which instruments referred to the amount of the loan as being $90,000. Incidentally, it is well to observe that the officers of the defendant Mortgage Bond Company were experienced in the loan business. It cannot be seriously contended that they were misled because of ignorance or because of their being unused to such transactions. Mr. Reed was also secretary-manager of the building and loan association, a party defendant. The loan association was engaged in the business of lending money under repayment plans not wholly dissimilar to the contract sued on. He is likewise familiar with computing interest, executing loans, and generally carrying out transactions relating to the building and loan business.

In the Mitchell Case, supra, reference is made to the case of Lewis v. Vassar (Wash.) 232 P. 312. This case is frequently referred to in the briefs. It is suggested that this case has not been followed by the Supreme Court of Washington. This is a mistake. In Seattle Trust Co. v. Morgan, 9 P. (2d) 1079, the Washington court specifically adhered to the principle announced in the case of Lewis v. Vassar, supra. Coincidentally, most of the principal issues involved in the case at bar appear in that case. There, as here, the Mortgage Security Corporation of America was the lender and the Union Trust Company of Maryland was the foreign trustee. In that case, as in this, the defendants alleged usury in the loan contract. In that case it was asserted that the real party in interest was not before the court and was a foreign corporation not entitled to maintain the action. There, as here, the plaintiff was the successor trustee. In that case, as in this, fraud was alleged in the execution of the instruments sued upon, and misrepresentations made as to the rate of interest and other matters. In that case, as in this, the note was payable to bearer, bearing interest at the rate of 6 per cent. per annum and having attached thereto 20 coupon notes as security for the indebtedness defendants executed in favor of the Seattle Title Trust Company (plaintiff's predecessors in interest) and the Union Trust Company of Maryland, a mortgage covering the real estate involved which was intended to secure the loan. In that case, as in this, the forms upon which defendant's application for a loan was made were evidently

furnished by the Mortgage Security Corporation through its New York office. In that case, the court decided against the defendants on all the defenses asserted, and, in the syllabus, held:

(1) "Trustee under mortgage loan held entitled to maintain action for foreclosure without joining beneficiary."

(2) "In determining whether contract is usurious, entire period of contract must be considered."

(3) "Where contract claimed to be usurious is susceptible of two constructions, that construction which makes it lawful will be adopted."

(4) "Evidence in foreclosure suit held insufficient to establish that execution of mortgage for amount greater than that actually loaned was procured by fraud."

In Calloway v. State ex rel., 117 Okla. 43, 346 P. 873, in the syllabus this court said:

"Where A agrees to pay B a valuable consideration to secure a loan from C and B gives C the consideration paid by A as an inducement to C to extend the loan to A, such transaction does not constitute usury, in the absence of fraud or collusion, although, at the request of B, the consideration passed direct from A to C."

The foregoing case is cited in Pushee v. Johnson, 105 A. L. R. 789. This case is persuasive of the issue herein discussed. The Supreme Court of Florida, in the syllabus, held:

"1. The borrower may legitimately agree with the lender to pay the actual and reasonable expenses of examining and appraising the security offered for the loan, as well as the costs of title insurance and of closing the transaction, although such payments, when added to the interest contracted for, exceed the legal rate of interest.

"2. Usury is not shown by the fact that a lender receives from the borrower's agent, as a condition of making the loan, half of the commission which the borrower has already agreed to pay the agent for his services in procuring the loan, although the amount so received by the lender, added to the rate reserved for the loan, exceeds the legal rate of interest, where the parties act in good faith without intent to evade the usury law and no additional burden is placed on the borrower by the division of the commission."

In Braniff Inv. Co. et al. v. Norton, 80 Fed. (2d) 598, the Circuit Court of Appeals for the Fifth District, in the syllabus, held:

"1. Whether note executed in Texas and payable in Oklahoma was usurious must be determined by Oklahoma law, notwithstanding that holder had option of making note payable elsewhere, where such option h'ad never been exercised.

"2. Under Oklahoma law, test of usury is whether, figuring all interest payments, including as interest the amount deducted in advance, contract requires more than 10 per cent. per annum to be paid for the term the loan has to run.

"3. $10,000 lo'an from which was deducted $400 as commission and which was payable in 96 installments of $145.82 held not usurious in Oklahoma, where loan would be considered as of $10,000 and the $400 commission would be treated as advance interest, making interest included in monthly installments less than 10 per cent."

In the body of the opinion the court cites authorities, a number of which are from Oklahoma, supporting the conclusion herein that the contracts entered into by the parties in the case at bar were not usurious. Numerous authorities 'are cited by the defendants, holding that contracts similar to the contracts sued upon in these proceedings are usurious, but 'after full consideration of the authorities cited, we are satisfied that under no theory can it be determined that under our st'atutes and the decisions of this court the loan was usurious.

The next question of primary importance is, Was the Mortgage Security Corporation of America doing business in Oklahoma in contravention of the laws of this state? It is admitted th'at neither of the foreign corporations had complied with sections 130, 131, or 132, O. S. 1931. These sections read as follows:

130. "Every foreign corporation ' shall, before it shall be authorized or permitted to transact business in this state or continue business therein, if already established, by its certific'ate under the hand of the president and seal of the company, appoint an agent who shall be a citizen of the state and reside at the state capital, upon whom service of process m'ay be made in any action in which said corporation shall be a party; and action may be brought in any county in which the cause of action arose, 'as now provided by law. Service upon said agent shall be taken and held as due service upon said corporation; and such certificate shall also state the princip'al place of business of such corporation in this state, with the address of the resident agent."

131. "A duly authenticated copy of the appointment and commission of such agent shall be filed and recorded in the office of the Secretary of State, for which a fee therefor of one dollar shall be p'aid to the secretary and a like fee of one dollar for each subsequent appointment of any agent so filed. A certified copy of the appointment of said agent under the hand 'and seal of the Secretary of State shall be sufficient evidence of the appointment of said agent in any court. The Secretary of State shall prepare 'a list for distribution giving the names of all corporations with the name of their agent, showing the address of the agent, by street and number, and shall include the same in his biennial report to the Governor."

132. "If any such foreign corpor'ation shall fail to comply with the foregoing provisions of this article, all its contracts with citizens of this state, entered into after the approval of this article, shall be void as to the corporation, 'and no court of this state shall enforce the same in favor of the corporation."

It is well, also, to consider section 134, O. S. 1931, which reads:

"This article shall not be effective in cases where its enforcement would conflict with the powers of Congress or the federal laws to regulate commerce between the states."

In addition to the foregoing sections of the statute, it is necessary to consider sections 43 and 44. art. 9, of the Constitution of Oklahoma. Said sections read:

"Section 43. No corporation, foreign or domestic, shall be permitted to do business in this state without first filing in the office of the Corporation Commission a list of its stockholders, officers 'and directors, with the residence and post office address of, and the amount of stock held by each. And every foreign corporation shall, before being licensed to do business in the state, designate an agent residing in the state; and service of summons or legal notice m'ay be had on such designated agent, and such other agents as now or may hereafter be provided for by law. * * *"

"Section 44. No foreign corporation shall be authorized to carry on in this state, any business which a domestic corporation is prohibited from doing, or be relieved from compliance with 'any of the requirements made of a similar domestic corporation by the Constitution or the laws of this state. * * *"

The question of "doing business" is a controversial question. Of necessity the question must be determined upon the facts in each particular case. Again, we are constrained to adhere to the decisions of this court, rather than to follow the decisions of the courts of other jurisdictions.

First, we desire to comment upon some of the authorities submitted in the briefs filed herein. A strong case in support of defendants' contention is John Hancock Mutual Life Ins. Co. v. Girard (Idaho) 64 P. (2d) 254. This decision tends to support defendants' contention. It is to be observed, however, that in that case the Supreme Court of Idaho had under consideration a constitutional provision more drastic than sections 43 and 44, supra, of the Oklahoma Constitution. In the Hancock Case, supra, the court refers to the fact that the Constitution of Idaho on the question of doing business, provides: **"Any** business in this state." That court asserts that this provision in the Idaho Constitution is identical with the provision in the Alabama Constitution to which defendants frequently refer in their briefs. The decisions of the various courts place considerable emphasis upon the word "any" contained in the Constitutions of a number of the states. Under provisions such as are contained in the Idaho and Alabama Constitutions and statutes, it might be more seriously contended that the facts in the case at bar would come within the constitutional and statutory prohibitions. However, the provision in the Oklahoma Constitution against "doing business" is not so restrictive. In the case at bar a great deal of stress is placed upon the fact that the Mortgage Security Corporation of America, about the time of the execution of the contract sued upon, was quite prolific in its correspondence concerning the Mortgage Bond Company loan. It appears that frequent inquiries were made in correspondence concerning the instruments executed and the manner and method by which payments were to be made. Also, when the instruments sued upon were received at its Norfolk office, the Security Corporation wrote the mortgagors, advising of the receipt of the instruments and certain other matters not necessarily essential. In addition, payments on the mortgage were made direct from the principal office of the Security Corporation in Norfolk, Va. Some additional testimony was produced, the purpose of which was to show that the foreign corporation was transacting business in Oklahoma. We are constrained to hold, however, that this correspondence and testimony was occasioned more as a matter of precaution in the safety of its investment, rather than an attempt on the part of the foreign corporation to evade the laws of this state.

In the supplemental brief, amici curiae, counsel cite the following Oklahoma cases: Langley v. Ford, 68 Okla. 83, 171 P. 471; Title Guaranty & Surety Co. v. Slinker, 42 Okla. 811, 143 P. 41; Seidenbach v. A. E. Little & Co., 146 Okla. 247, 294 P. 126.

These cases are not in point. In the Langley Case it was admitted that the plaintiff was an employee of the foreign corporation. Also, that the party taking the mortgage was local agent of the foreign corporation. In the Title Guaranty Case, the question was whether the foreign corporation was transacting business within the state so as to authorize service on the Secretary of State.

In the Seidenbach Case the foreign corporation was operating a general store through a paid manager. Certainly the facts in the cited cases are scarcely persuasive, much less conclusive.

The case of Denison v. Phipps, 87 Okla. 299, 211 P. 83, is a case very much in point. In that case the court passed upon the material constitutional and statutory provisions involved in the case at bar.

In the Denison Case, supra, this court, quoting from Fuller v. Allen, 46 Okla. 417, 148 P. 1008, held:

"The question now presented is, What is meant by transacting business? The best definition we can think of for this phrase is the doing or performing a series of acts which occupy the time, attention, and labor of men for the purpose of livelihood, profit, or pleasure. It is well settled upon authority that the doing of a single act pertaining to a particular business or transaction will not be considered carrying on, transacting, or doing business. The mere term itself implies more than one transaction.'

" ' "The doing of a single act of business in another state does not constitute the doing of business within the meaning of foreign corporation laws." ' "

In the foregoing case the following quotations are noted:

"The delivery of the instrument is its completion, and the place of delivery is in general the place of contract. Thus, where an instrument is signed in one state and delivered in another, the law of the latter governs, since the contract is made in the latter state. The place of delivery need not appear on the face of the note or bill, and the actual place of delivery will control the apparent place shown by the date, un-

less a contrary intent appears, except in the case of a bona fide holder for value, as already stated." 8 C. J. 89.

Again it is said:

"A foreign corporation is not doing, transacting, carrying on, or engaging in business in a state within the meaning of the statutes under consideration, by entering into contracts with residents thereof, where such contracts are made and are to be performed elsewhere. This rule is not altered by the fact that such contracts relate to property situated within the domestic state." 14A C. J. 1281.

Further on it is said:

"On the principle stated in the preceding section, it has been held that a foreign corporation is not doing, transacting, carrying on, or engaging in business in a state by making loans outside the state to residents thereof, on applications obtained by agents of the corporation acting within the state, where the application is transmitted to the foreign corporation at a point outside the state for acceptance or rejection, and the loan is made payable outside the domestic state, or where such a loan is made upon acceptance outside the state of an application received without the intervention, for the purpose of transmission, of an agent of the corporation within the state." 14A C. J. 1283, citing: Martin v. Bankers Trust Co. (Ariz.) 150 P. 87: Norton v. Union Bank & Trust Co. (Tenn.) 46 S. W. 544; Brown et al. v. Guaranty Savings Loan & Inv. Co. (Tex. Civ. App.) 102 S. W. 138; Scruggs v. Scottish-American Mtg. Co. et al. (Ark.) 168 S. W. 563.

True, in the above case the transactions in reference to the loan were carried on by mail, but the reasoning and conclusion arrived at by the court strongly support the contention of the plaintiff in the case at bar. Herein we have one corporation borrowing money from another corporation for the purpose of building an apartment house; ostensibly, an adventure for profit. J. Nile Godfrey, testifying for the defendants, referred to this loan as an "off-color loan"; that is, a larger loan than the average investor cared to "buy." The same witness testified that the Mortgage Security Corporation of America was one of 40 or 50 of the customers of the Godfrey Investment Company investing in mortgages which it secured. Many of these investors were located outside the state of Oklahoma and apparently afforded a convenient and ready market for the disposal of "off-color loans." As was said by the court in Seattle Trust Company v. Morgan, supra:

"Appellants may have entered into an unfortunate contract, and it is very likely that by the terms thereof they are called upon to pay a high rate of interest for the use of the money which they have borrowed, but we agree with the trial court in its holding that the record discloses no facts which entitle them to relief."

After a long, thorough, and painstaking trial, made up of a mass of involved figures, schedules, tables, computations, and testimony, interspersed with argument, the trial court, by its judgment, left the parties where it found them.

"Where a jury is waived and the cause is tried to the court and the finding of the court is general, such finding is a finding of every special thing necessary to be found sustaining the general judgment, and such finding, when reasonably supported by the evidence in the case, is conclusive on the Supreme Court upon all doubtful and uncertain questions of fact so found." Barnett v. Hentges, 111 Okla. 91, 238 P. 188.

The judgment of the trial court is affirmed.

All the Justices concur.