Britton et al. v. Adams et al.

*97 P. 2d 567.*

No. 28672.   Sept. 26, 1939.

Rehearing Denied Nov. 21, 1939.

Application for Leave to File Second
Petition for Rehearing Denied
Denied Jan. 9, 1940.

F. V. Westhafer and John Ladner, of Tulsa, for plaintiff in error.

Donald L. Brown, of Tulsa, for defendant in error.

RILEY, J.   This is an appeal from a judgment and decree of foreclosure of a mortgage on real estate.

Defendant in error W. E. Adams was plaintiff below. Elsie Britton, W. L. Britton, wife and husband, T. D. Evans, Evans Investment Company, a business trust, and others were defendants.

On and prior to September 12, 1928, the Brittons were owners of certain lands and certain lots, tracts, and subdivisions in or adjoining the town of Turley, in Tulsa county. They had sold or contracted to sell some of the lots or subdivisions, and had erected some houses thereon. The whole of said premises were mortgaged.

The Vaughn Lumber Company had furnished the Brittons lumber and other materials, and had filed materialman's liens against said property or a portion thereof. The liens were about to be foreclosed. Thereupon the Brittons solicited the aid of T. D. Evans, an attorney, to procure for them a loan sufficient to discharge the mortgage and liens.

Arrangement was made with defendant in error W. E. Adams to lend the money, and on September 12th, the Brittons executed a note to Adams in the sum of $8,500. The note was for three years and bore 8 per cent. interest. They executed a mortgage covering said lands to secure said note. In addition thereto they executed a note to T. D. Evans to run for two years bearing 8 per cent. interest, and executed a second mortgage to secure said note.

About or at the same time, a contract and trust agreement between the Brittons and T. D. Evans was entered into, the substance of which was that Evans should take over all existing contracts of sale and mortgages which the Brittons then had affecting any of said lands, receive the money from the persons holding contracts of purchase, and when completed would execute a warranty deed therefor. All moneys so collected were to be applied first to the payment of general or special (if any) taxes; next to the payment of interest on the Adams note, next upon the interest on the $2,000 note to Evans, and next upon the principal of the latter note, it being understood that as the several contracts of sale were paid out the property affected should be released from both mortgages, and when both notes were fully paid all remaining property should be reconveyed to the Brittons. The Brittons were to have full authority to secure purchasers for any portion of the property and fix the contract price with certain limitations. Evans agreed to do all the necessary work, drawing contracts when requested, collecting all money arising from said land, except for oil and gas, and upon request of the Brittons, within ten days, to make a full and complete accounting. Said contract then provided:

"Said second party (Evans) in full consideration for his services and performing all the terms of the trust is to have the sum of $2,000, which is evidenced by said mortgage of $2,000 herein described. All expenses such as recording or incident to conveyance of the title or for abstracting are to be paid by first parties but no charge for the services of T. D. Evans except as stated."

Apparently, to enable Evans to carry out said agreement, the Brittons executed a warranty deed to him for said property.

In connection with this arrangement a bank account in the Central National Bank of Tulsa, called the "Britton Land Account," was set up. Evans took over the contracts, etc., collected payments, deposited the money in the special account, and issued checks against said account as hereinafter shown until September 12, 1931, when the Adams note became due. In the meantime Evans had created what is known as the Evans Investment Company, a business trust, to which he transferred all the property, and in which name he thereafter conducted the Britton deal. In the meantime Evans, or the Evans Investment Company, had collected money sufficient to pay, and had paid, the $2,000 Evans note.

When the Adams note became due, an arrangement for the extension thereof was entered into whereby the Brittons executed another note to T. D. Evans for $333.33, to run one year with interest at 8 per cent. This note was also paid off within the year. In the meantime many payments were made on the Adams note.

Down to September 12, 1931, but two credits were endorsed on the note, one of $300, dated 4-2-31, and one dated 7-23-31, for $650.

There is an endorsement dated September 12, 1931, to the effect that by settlement as of that date the principal of the note was $7,708.34, and "Extended to September 12, 1932."

The note not having been paid in full, Adams commenced this action on May 28, 1937, claiming a balance due at that time of $5,676.51, and seeking foreclosure of the mortgage.

The Brittons answered admitting the execution of the note and the receipt of

the $8,500 represented thereby. They denied, under oath, the amount claimed as due by Adams and alleged specific payments aggregating some $1,785 not credited on the note. They then alleged that a proper accounting would further reduce the amount due on said note. Then, by way of cross-petition, they set forth and alleged in substance that Adams and Evans were partners in the loan transaction, and that the $2,000 note to Evans, in connection with the renewal of the note, were but mere subterfuges to cover up and hide usurious interest. That the $2,000 note and the $333.33 note represented nothing more than a charge for interest, and, therefore, the whole transaction was tainted with usury. They prayed for judgment against both Adams and Evans, and Evans Investment Company, for double the amount of interest charged and collected, treating all the $2,000 note and $151.47 interest thereon and all the $333.33 note and $7.60 interest paid thereon as interest on the principal note to Adams.

Adams then amended his petition reducing the amount claimed to $4,997.43, and answered the cross-petition by general and specific denial.

The answer was not then verified. Defendant Evans answered the cross-petition by verified general denial and specific verified denial of the allegations as to a partnership between himself and Adams; and affirmatively alleged that he had properly accounted for all money which came into his hands by virtue of said transactions, and had paid same out in the proper discharge of his agreement, except $25.57, which was still in the bank, which he offered to pay over as the court might direct. He pleaded and attached a copy of the contract and trust agreement and alleged that all the money he had paid to himself was for compensation for his services in said matters, including services in procuring the original loan.

The Evans Investment Company answered, alleging, in substance, that it was organized for the sole purpose of taking title to the lands, and hold same for such future disposition as the owners thereof might direct. That the Investment Company never received any of the money, and had no connection therewith; that it still held title to part of said lands which it stood ready to convey as the court might direct.

After issues were joined, a jury was empaneled and trial was had. At the beginning of the trial an order was made in effect dismissing the cross-petition as to T. D. Evans. Later on this order was revoked.

The plaintiff, Adams, put on his evidence tending to prove the balances due on the note, and rested. Defendants Elsie and W. D. Britton put on their evidence and rested. Whereupon, plaintiff, Adams, moved for a directed verdict, and demurrer to the evidence of defendants Britton on their cross-petition.

The demurrer was sustained and the court directed the jury to return a verdict for plaintiff for the amount sued for.

Defendants Evans and Evans Investment Company moved for a nonsuit and an order dismissing the cross-petition as to them. This motion was sustained.

Judgment was entered accordingly, and after unsuccessful motion for new trial defendants Elsie Britton and W. L. Britton appeal, making Adams, Evans, and Evans Investment Company defendants in error.

There are some 21 assignments of alleged error. They are presented under two propositions.

The first proposition is that the court erred in sustaining the demurrer to the Britton evidence and directing a verdict for Adams, and in dismissing the Britton case as to T. D. Evans and Evans Investment Company.

It must be borne in mind that defendants Britton expressly admitted the execution of the note and mortgage and admitted that they received the full $8,500 represented by the note. Their right to maintain an action such as is represent-

ed by their cross-petition depended entirely upon their claim of a partnership between Adams and Evans, and their claim of a joint interest between Evans and Adams in making the original loan, and their contention that the plan calling for the execution of the $2,000 note, and the $333.33 note to Evans, the transfer of the legal title of the land to Evans, and later to the Evans Investment Company, was but a scheme and subterfuge under which to claim and collect usurious interest. In other words, their cross-petition is based wholly upon the claim of usury. Therefore, their cross-petition must fail unless they produced evidence which, together with the reasonable inferences therefrom, would tend to prove their allegations in this regard. Failing in this, it necessarily follows that the court was right in sustaining the demurrer of Adams to their evidence on the cross-petition. We are unable to find, and they do not point out wherein there is evidence to sustain the claim of partnership or joint interest between Adams and Evans. There is no competent evidence in support of that claim. In fact they admit, and say in their brief that under the contract they entered into with Evans "This $2,000 note was to be Evans' compensation for performing the trust services and his legal services with reference to the sales of small tracts." Britton is a man of experience in such matters and testified that he read and fully understood the contract before he signed it. It is true that the evidence shows that Adams received a part of the $2,151.47 paid out of the proceeds from the sales to liquidate the $2,000 note given to Evans. It is likewise true that the evidence shows that Adams received substantially one-half of the money paid on the $333.33 note given to Evans. But it is well settled that this would not constitute usury.

In Mortgage Bond Co. et al. v. Stephens, Trustee, 181 Okla. 182, 72 P. 2d 831, it is held:

"Usury is not shown by the fact that a lender received from the borrower's agent, as a condition of making the loan, half of the commission which the borrower has already agreed to pay the agent for his services in procuring the loan, although the amount so received by the lender, added to the rate reserved for the loan, exceeds the legal rate of interest, where the parties act in good faith without intent to evade the usury law and no additional burden is placed on the borrower by the division of the commission."

In Calloway v. State, 117 Okla. 43, 246 P. 873, it is held:

"Where A. agrees to pay B. a valuable consideration to secure a loan from C., and B. gives C. the consideration paid by A. as an inducement to C. to extend the loan to A., such transaction does not constitute usury in the absence of fraud or collusion, although, at the request of B., the consideration passed direct from A. to C."

See, also, Pushee v. Johnson (Fla.) 105 A.L.R. 789.

Now, in this case, if it be conceded that the $2,000 note was given to Evans as commission for procuring the loan, and Evans in turn gave Adams a part of the commission, it would not be usury under the above rule. But here it is conceded that the $2,000 note was given to compensate Evans for his services in carrying out the trust agreement between Evans and the Brittons, and for his legal services in connection therewith.

After the original note became due it was renewed and Evans continued to perform the services under the agreement. Whether this note was given to Evans to compensate him for his services thereafter, or as a commission for obtaining a renewal of the note, the fact that Adams was paid a part of the proceeds of that note would not show usury under the same rule.

There was then no evidence of usury and the demurrer to the evidence on the cross-petition was properly sustained.

Defendants Britton having failed in proof of their claim of usury, their only defense as to plaintiff's note was that of

payment. In their brief they present the proposition that a true accounting by Evans, or the trustee, would have shown that all the money deposited in the "Britton Land Account" had not been applied on the notes, and therefore the court erred in directing a verdict for plaintiff in the amount sued for. But the failure of Evans to account for all the money which came into his hands as such trustee, if such be the case, was not chargeable to Adams, unless it be shown that he received some part of the money not accounted for by Evans.

The Brittons contend that the amount claimed as due by Adams could not possibly be true because the credits shown by the evidence included an item of $128.91 represented by a certain check which was credited on Adams' note and also on one of the Evans' notes. The evidence did so show, but this was an error in favor of the Brittons. If they got credit on both notes for the same money, they are in no position to complain.

They were given every opportunity to show, if they could, that payments had been made to Adams for which they had not been credited. They made no such proof.

It appears from the evidence that included in the assets turned over to Evans were two mortgages on small tracts of land which the Brittons had sold, one to E. McBride and one to Jess McBride. The McBrides had refinanced their loans through the H.O.L.C., and the amounts received from such source were less than the mortgages given to the Brittons and were paid to Adams. Britton claimed that Adams had agreed to stand the loss, which amounted to some $1,600. In other words, Adams, in order to get a payment of $728.43 out of one of the McBride mortgages, and $500 from the other McBride mortgage, agreed that if the Brittons would release their mortgages in order that the Home Owners' Loan Corporation could obtain a first mortgage on the McBride properties, for a lesser amount than that covered by the Brittons' mortgage, he, Adams, would stand the resulting loss to the Brittons. Britton testified that this was done. The evidence is undenied, and for the purpose of the demurrer to the evidence, is admitted as true. This is a claim in the nature of accord and satisfaction pro tanto. It is so stated in Adams' brief. It is contended that, since the Brittons paid no more than Adams was entitled to receive, there was no consideration for the promise, and, therefore, Adams is not bound thereby. The general rule is that a consideration is necessary to make an accord and satisfaction valid. 1 C. J. 528.

It is stated further that there must be some advantage or presumed or assumed advantage accruing to the party who yields his claim, or some detriment to the other party. Ibid.

The consideration may consist of anything which might be a burden to the one party or a benefit to the other. 1 C. J. 544.

The Brittons were not obliged to release the mortgages which they held; when they did so they suffered at least a presumed detriment. It will be presumed that their mortgages, being for some $1,570 more than the amount Adams received, had some value in excess of the amount loaned by the H.O. L.C. There was then some consideration for the promise.

The cases cited by defendant in error merely hold to the rule that a consideration is necessary, and are therefore not strictly in point. It was, therefore, error to take the case from the jury and direct a verdict for the amount sued for. Adams, in his brief, states, however, that in the event this court should deny his contention on this phase of the case, he offers to file a remittitur in the amount of $1,600 as a further credit by the Brittons. In such case a reversal is not necessary.

Plaintiffs in error present the further proposition that they did not receive a fair and impartial trial, and that the trial court committed prejudicial error in its rulings, and in certain orders made and revoked during the trial.

324

An examination of the record will disclose that this contention is without substantial merit.

There was no error in dismissing the cross-petition against defendants Evans and Evans Investment Company. When the Brittons failed to produce evidence sufficient to sustain their allegations of partnership or joint interest between Adams and Evans and Evans Investment Company, so as to sustain their claim of usury, there was nothing left in this case, as between the Brittons and Evans and Evans Investment Company, except the alleged claim of breach of trust or failure to account for money paid into the "Britton Land Account." This is a matter for adjudication in an action between the Brittons and Evans and Evans Investment Company in a separate action. It has no place in this action after failure to connect Evans and Evans Investment Company with a partnership or joint interest with Adams.

The difference between the amount of the McBride mortgages to Britton and the amount received by Adams on account of the two McBride transactions, as shown by the evidence, is $1,571.56. This being the only item upon which the Brittons were entitled to go to the jury, if defendant Adams will, within 10 days, file a remittitur in not less than said amount, the judgment will be affirmed, otherwise it will be reversed and remanded for a new trial.

BAYLESS, C. J., and OSBORN, GIBSON, and DAVISON, JJ., concur.